BYRON REED COMPANY ET AL., APPELLANTS, V. CITY OF
OMAHA, APPELLEE.

FILED MARCH 24, 1911.  No. 16,376.

1. **Municipal Corporations: SPECIAL ASSESSMENTS: RELEVY.** Chapter
   15, laws 1903, which purports to cure irregularities in special as-
   sessments levied in cities of the metropolitan class subsequent to
   March 15, 1897, and authorizes the taxing officers to relevy those
   assessments, does not by its own force deprive the officers of
   authority to relevy special assessments levied prior to that date.

2. ———: ———: **APPEAL: PROCEDURE: ISSUES.** The procedure in the
   district court on appeals from orders made by the board of equal-
   ization in metropolitan cities is the same as on appeals from a
   judgment of a justice of the peace. The parties should file plead-
   ings, and may introduce any competent evidence relevant to the
   issues, which should be the same as those joined before the board.

3. ———: ———: **RELEVY: LACHES.** If the taxing officers of a city of
   the metropolitan class fail for more than ten years to relevy a
   special assessment after it has been adjudged invalid, or after
   other like assessments in the same district have been adjudged
   invalid for a reason that will control all the assessments levied
   at the same time, the delay will estop the city from relevying the
   assessment upon lots that have been transferred subsequent to
   the date the original assessment was levied, unless for some
   lawful reason the owner of the property is estopped to avail him-
   self of the defense of laches.

APPEAL from the district court for Douglas county:
LEE S. ESTELLE, JUDGE. *Reversed.*

*Charles Haffke,* for appellants.

*H. E. Burnam, I. J. Dunn* and *J. A. Rine,* contra.

ROOT, J.

The district court for Douglas county, upon an appeal
of several property owners from an order of the board of
equalization of the city of Omaha, and an ordinance re-
levying a special assessment levied in 1888 to pay the cost
of constructing a sewer, adjudged the relevy valid. The
property owners appeal.

The case was evidently tried in the district court upon the evidence contained in a bill of exceptions settled and allowed by the board of equalization. The evidence is unsatisfactory in some respects, but it proves that the sewer was constructed and the original levy made in 1888. At this time the appellants' real estate constituted part of an undivided tract within the boundaries of the sewer district. According to an account kept by the comptroller, sufficient of the special assessments levied in the sewer district have been paid to balance the charges for warrants drawn against the levy plus a charge for fees and $14.53 transferred to a sinking fund. This account also contains an entry: "Taxes canceled, $282.75," and "taxes uncollected, $56." The aggregate of the contested levy is $282.75. The evidence tends to prove that each appellant purchased his property subsequent to the original levy. In 1905 the city council by resolution requested the city treasurer to give a description of all lots and tracts of land within the city upon which special assessments had been levied and subsequently canceled, and directed the city engineer to prepare and report plans for the reassessment of this real estate. The order of the board of equalization recites that, in making the relevy appealed from, it finds that benefits have been bestowed as shown by the levies prepared by the city engineer. Unless we should presume from the proceedings that the special assessment first levied upon the Ittner tract, out of which the appellants' lots were carved, has been canceled, there is no proof in the record of that fact; nor is there any proof that the assessment was canceled by a judgment of the court, or that the legality of all the assessments levied in the sewer district in 1888 was demonstrated by a judgment involving an assessment against some tract of land not owned by any of the appellants. Independently of the proceedings referred to, there is no proof that the original assessment laid against the Ittner tract has not been paid. Under these circumstances should the district court have adjudged the relevy valid?

The original assessment was doubtless made by virtue of sections 60 and 78, ch. 10, laws 1887, which authorized the mayor and city council to create sewer districts within the city; to construct sewers and to pay the cost thereof by the levy of special assessments upon the lots and lands within the district, and also authorize a relevy of all assessments declared void or concerning which a doubt existed. Section 94 of the act of 1887 in general terms also gave the city taxing officers authority to relevy general taxes and special assessments which could not be collected because of any error or irregularity in the original proceedings. Section 78 of the charter was amended by chapter 13, laws 1889, so as to omit all reference to the relevy of an assessment, but the mayor and city council have at all times since the enactment of chapter 10, laws 1887, had authority, more or less general in its terms, to relevy special assessments which have failed because of any irregularity or omission on the part of the taxing officers. The exercise of that authority with respect to sewer assessments has been approved in *Mercer Co. v. City of Omaha,* 76 Neb. 289, and in *Richardson v. City of Omaha,* 78 Neb. 79. In 1903 the legislature by chapter 15, laws 1903 (Comp. St. 1909, ch. 12a, sec. 250) provided that all defects, whether jurisdictional or otherwise, in all special assessments levied in cities of the metropolitan class, subsequent to March 15, 1897, were cured and the taxing officers were authorized to relevy all those uncollected assessments. This act was held valid in *Gardiner v. City of Omaha,* 85 Neb. 681. The appellants contend that the construction given this act in the *Gardiner* case deprives the taxing officers of authority to relevy an assessment levied prior to March 15, 1897. The sole question argued and determined in *Gardiner v. City of Omaha, supra,* was whether the classification made by the legislature in enacting the statute, *supra,* was valid, or whether that classification was so unreasonable and capricious as to bring the act within the condemnation of section 15, art. III of the constitution, which provides, among other things,

that the legislature shall not pass local or special laws incorporating cities or changing or amending their charters. The act cures defects in special assessments, and vests the taxing officers with greater authority than can be found in the city charter, but does not purport to repeal the charter provisions or to prohibit the taxing officers from proceeding thereunder. However, it evidences the legislative thought that metropolitan cities should act with reasonable celerity in relevying special assessments.

It is unnecessary to say just how far the legislature may proceed within constitutional limits in devising and providing a procedure for the collection of special assessments to reimburse the state, or any of its subdivisions, for money expended in the construction of public improvements which specially benefit the property assessed. Where, however, that authority is delegated to a municipality, it should act with some reasonable degree of promptness, or the defense of laches may be interposed by a property owner who purchased his holdings subsequent to the original levy and under such circumstances that he is not estopped to set up the defense of laches. If the city having the authority to act fails to do so for ten years after a special assessment has been declared void, or for ten years after the invalidity of all special assessments levied for a particular improvement has been demonstrated by a judgment in a suit maintained or defended by the owner of one or more lots in the district, it should not be permitted, over the objection of an individual who acquired title subsequent to the original levy, to exercise that authority.

The defense of laches is recognized in Hamilton, Law of Special Assessments, sec. 828, and in *State v. District Court,* 68 Minn. 242, and was applied to defeat a reassessment in *City of Olympia v. Knox,* 49 Wash. 537. The legislature by the enactment of chapter 15, laws 1903, recognized the principle, and, while that act does not control this case, it is important in determining the latitude

that should be accorded the city in analogous cases. In saying this we do not overlook the statement in the charter to the effect that special assessments shall constitute a perpetual lien upon real estate affected thereby, but a void assessment is not a lien upon the property it purports to encumber. Neither do we forget that in *Mercer Co. v. City of Omaha, supra,* we held that the statute of limitations does not apply to the relevy of a special assessment. In that case the proceedings to relevy were instituted within ten days after the assessment was adjudged void. The defense of laches was not discussed in that case, nor could it have been maintained upon the reported facts.

We do not desire to be understood as holding or suggesting that a relevy made by the taxing officers of a metropolitan city more than ten years after the original levy was made should be held void if collaterally attacked.

The proof is not so clear that we should definitely dispose of this case, nor is it specific enough to sustain the judgment appealed from. If, upon a retrial of the case, it shall appear that the special assessments levied in 1888 to pay for constructing the sewer in district No. 79 were adjudged invalid more than ten years preceding the date, in 1905, when the council by resolution initiated the proceedings for a relevy of the contested assessments, and that the appellants did not own their holdings when the original assessment was made, there will be proof of such laches as should defeat the relevy, unless there is proof of some facts or circumstances sufficient to avoid the defense of laches.

The city charter contemplates that, on appeals to the district court from orders entered in cases of special assessments, pleadings will be filed and issues joined as on appeals from judgments of justices of the peace. In the case at bar a petition, but no answer, was filed. We do not think the city intended to confess the allegations in the petition, but it should have answered. The case was

evidently tried by the district court on the theory that an answer had been filed, and the case has been considered on that theory in this court. The statute gives the right to appeal, and consequently either litigant in the district court may introduce any competent evidence relevant to the issues.

We have not overlooked the other subjects discussed in the briefs, but it is not thought necessary to discuss or determine them upon the evidence before us.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.