STATE OF MINNESOTA ex rel. MINNESOTA TRANSFER RAILWAY COMPANY v. DISTRICT COURT OF RAMSEY COUNTY.[1]

May 12, 1897.

Nos. 10,459—(57).

**City of St. Paul—Local Assessment—Railroad Property—Exemption—Reassessment—Laches.**

Upon certiorari to review the action of the district court overruling relator's objections, and ordering judgment against its property in the city of St. Paul for a reassessment of the benefits for grading Prior avenue, *held*: (1) That the description of the property assessed was sufficient. (2) That the evidence did not show that the assessment was fraudulent, or made upon a demonstrable mistake of fact, or upon an illegal principle or erroneous rule of law. (3) That the evidence justified the trial court in holding. that the real estate in question was not held and used for "railroad purposes," so as to render it exempt from such assessments. (4) That there is no statute expressly limiting the time within which the city of St. Paul may make new assessments for local improvements when judgment on the original assessment has been denied, and that, in view of the special provisions of the city charter, it would not be permissible to adopt by analogy the statute relating to civil actions; that the only limitation as to time within which the city can make a reassessment is where the lapse of time is so long, and the laches of the city so great, that the right has become stale, and the city must be deemed to have waived or abandoned it. (5) That the facts do not bring this case within any such rule.

Certiorari to review the action of the district court for Ramsey county, Egan, J., in confirming a reassessment for grading Prior avenue in the city of St. Paul. Order affirmed.

1 Reported in 71 N. W. 27.

The land reassessed for the grading was described in the notice for judgment as "the easterly 146 feet of that part of" certain subdivisions of governmental sections, "except Prior avenue, being in St. Paul, Minnesota."

*W. H. Norris,* for relator.

The relator is a railway company within State v. District, 54 Minn. 34, although its functions are limited. Its property is railroad property, to be regarded as the property of its component percentage paying members as in State v. St. Paul, 42 Minn. 142. The language of G. S. 1878, c. 11, § 128, exempting "from all taxation and from all assessments" is substantially the same as involved in First Division v. St. Paul, 21 Minn. 526, and City v. St. Paul, 23 Minn. 469, in each of which payment of percentage was held to preclude improvement assessments. The exemption claimed is not exemption from any and all taxation, but from taxation in a certain way on account of a substituted method of taxation. County v. Chicago, 33 Minn. 537. That the land in question is held for railroad purposes see County v. St. Paul, 38 Minn. 163; State v. Hancock, 35 N. J. L. 537; City v. St. Paul, 39 Minn. 112; Grand Trunk v. Richardson, 91 U. S. 454; Illinois v. Wathen, 17 Bradw. 582. The original assessment and the reassessment of each parcel as delinquent was arbitrary, oppressive, unequal and unjust, and the result of mistake of fact, of fraud, or of acting on an illegal principle. The theory of local improvement assessments is that of uniform compensation to the city for benefits bestowed upon adjacent properties, in proper proportion to the benefits conferred peculiarly or exclusively upon those properties as distinguished from property generally, involving therefore actual benefits and exaction in corresponding proportion. Hale v. City, 29 Wis. 599; State v. District, 47 Minn. 406; State v. Brill, 58 Minn. 152. Before article nine of our constitution was amended in 1881, assessments for local improvements were unconstitutional as violating the rule of taxation according to cash value. Stinson v. Smith, 8 Minn. 326 (366). That amendment permits the legislature to authorize local assessments upon the property to be benefited by the improvement. It goes no farther. It authorizes assessments not upon property deemed benefited, but upon the property benefited in

fact. That the property in question was not benefited by this grade, see Donnelly v. Decker, 58 Wis. 461; St. Paul v. City, 35 Minn. 141. That a railway company receives no benefit, general or special, from a street running parallel with and adjoining its property used for right of way purposes, is plain upon principle, and sustained by City v. New York, 36 Conn. 256; City v. Philadelphia, 33 Pa. St. 41; Junction v. City, 88 Pa. St. 424; New York v. Morrisania, 7 Hun, 652. The statute of limitations had run. City v. Chicago, 45 Minn. 387.

*James E. Markham* and *Hermon W. Phillips,* for respondent.

Exemption from taxation extends only to such property as may fairly be said to be held and presently used for railroad purposes, and property not so used, although held for the purpose at some future time of devoting it to such use, is not within the exception. County v. Chicago, 33 Minn. 537. As to the equality of assessments see Rogers v. City, 22 Minn. 494; Carpenter v. City, 23 Minn. 232; State v. District, 33 Minn. 164; State v. Board, 27 Minn. 442; State v. District, 29 Minn. 62; People v. Mayor, 63 N. Y. 291. These proceedings do not constitute a civil action, Whallon v. Bancroft, 4 Minn. 70 (109); Ford v. Wright, 13 Minn. 480 (518), and consequently none of the limitations of chapter 66 apply.

MITCHELL, J. Certiorari to review the action of the district court in overruling relator's objections, and ordering judgment against its property for an assessment for grading Prior avenue. Four general objections to the assessment and to the application for judgment were interposed in the district court and are urged here, viz.: (1) That the description of the land assessed was indefinite and insufficient; (2) that the assessment was arbitrary and unequal, and the result of fraud, a mistake of fact, or of adopting an illegal principle; (3) that the land was exempt from such taxes and assessments because appropriated to "railroad uses"; (4) that in any event the right of the city to make the assessment was barred by the statute of limitations.

1. The only objection made to the description is that it cannot be determined therefrom whether the measurements of the land assessed are to be made from the center line or from the west line of Prior

avenue. There is nothing in the point. The description clearly excludes the whole of the avenue.

2. We have repeatedly held that under the charter of the city of St. Paul the judgment of the board of public works as to what property is benefited, and how much it is benefited, is final and conclusive, and cannot be reviewed by the courts unless it is shown to be fraudulent in fact, or to have been made up upon a demonstrable mistake of fact, or that in making it the board of public works applied an illegal principle or an erroneous rule of law. None of these things appear in this case. The mere existence of discrepancies between the original assessment and the reassessment, or the fact that the property on the respective sides of the avenue is not assessed exactly the same amount per front foot, fall very far short of proving fraud, mistake of fact, or the adoption of an erroneous rule or principle of law in making the assessment. Neither is there anything in the position that the property could not have been benefited at all by the improvement of streets in view of the particular railroad uses to which it is or can be devoted by the relator. Assuming, without deciding, that an assessment can ever be impeached by parol evidence merely showing that the property received no benefit in fact, still that fact is not to be determined with reference merely to the particular use to which the owner is devoting the property. And if, as will hereafter appear, the relator has never devoted the property at all to railroad uses, the last vestige of a foundation for relator's position is removed.

3. In considering the question what lands of a railroad company are included within the commuted system of taxation by payment of a percentage of the gross earnings of the road, and hence exempt from other taxes and assessments, this court, while saying that no hard and fast rule can be laid down, but that each case must be determined upon its own facts, has laid down certain general principles applicable to all cases. In County v. Chicago, 33 Minn. 537, 24 N. W. 313, it was said that it must be supposed that it was contemplated that the commuted system of taxation would, upon the whole, fairly effect the objects of taxation with respect to such corporations, and be equivalent in its results to the ordinary system, but that this theory necessarily rested upon the assumption that the

property of the corporation would be held and used for the purposes for which the railroad corporation exists, and that by such·use an income would be derived, the percentage of which is received by the state in place of a tax; and that, in so far as the property was not so used, this end is not accomplished, and hence the exemption only applied to such property as may be fairly said to be held and used presently for railroad purposes.

It was further said that this did not mean that the land may not, under any circumstances, be exempt from ordinary taxation, although not for the time in actual use for railroad purposes, as the word "use" is ordinarily understood; that the law must have contemplated that some period of time must elapse between the acquisition of land and its actual use; and that, while the necessary process of conversion of mere land into an operated railroad is being thus carried forward, the land is presently devoted to railroad purposes in contemplation of law. But it was there held, in substance, that land not thus in actual use for railroad purposes is not exempt, although it may have been acquired and is held in anticipation that it will or may be needed for such purposes at some indefinite time in the future. The same general principles were announced and applied in County v. St. Paul, 38 Minn. 163, 36 N. W. 109, and City v. St. Paul, 39 Minn. 112, 38 N. W. 925. It is suggested that this furnishes no definite rule by which parties can determine in any given case whether the land of a railroad company is or is not within the exemption. But we think this is a statement of general principles with sufficient clearness to enable parties to readily determine in the great majority of cases whether the land is exempt, and that whatever indefiniteness remains is inherent in the nature of the question.

We are of opinion that the stipulated facts explained and illustrated by the map contained in the record fully justified the court below in holding that the real estate in question was not exempt from this assessment. The entire property of the relator, consisting of about 200 acres, was all acquired prior to 1885. While it has constructed its plant, consisting of transfer tracks, stock yards, etc., upon this land, yet it appears that there are large portions of it, including the land assessed, upon which it has placed no structures or improvements of any sort, and which it is not now using, or in process of preparing

for use, for railroad purposes. Indeed, it is not apparent that these portions of the land ever will be used or required for use for such purposes. The most that can be claimed is that they may at some indefinite time in the future be needed and used for such purposes. Where a tract of land is devoted to railroad purposes to such an extent that it can be fairly said that substantially the whole of it is so used, notwithstanding that there are fragments, or comparatively small portions of it here and there, upon which there are no improvements, and which cannot be said to be in actual physical use by the railway company, we do not mean that such fragmentary pieces can be culled out and made subject to taxes and assessments. But that is not this case. It appears that there are large and substantial portions of the relator's real estate, including the land assessed, which are not, and may never be, devoted to railroad uses.

4. The final order of the common council for the grading of Prior avenue was adopted and approved in March, 1888. A contract for doing the work was let in July, 1888. The work was completed in May, 1889, and accepted by the city, and the final estimate allowed in June or July, 1889. The original assessment for benefits was confirmed September 21, 1888, the report filed December 12, 1888, notice given that judgment would be applied for December 22, 1888. The relator having filed objections, this application for judgment was brought on for hearing, and the application denied, May 27, 1889. The municipal authorities took no further steps in the matter until 1894, when, on October 1st, a new assessment was ordered, which was confirmed December 24, 1894, the report filed February 16, 1895, and the application for judgment, pursuant to notice, made on the same day. Upon this state of facts the relator claims that the right of the city to make the reassessment, or to take proceedings to enforce it, was barred by the statute of limitations.

Counsel's contention seems to be that a proceeding to enforce an assessment under the city charter is a civil action, that an assessment is "a liability created by statute," and therefore that the six-year limitation applies; but he does not make it clear what his position is as to the time when the statute begins to run, whether the time is to be computed from the confirmation of the original assessment to the confirmation of the reassessment or from the confirmation

of the original assessment to the time of ordering the reassessment, or from the time a valid assessment might have been made in 1888 down to the time when the report of delinquent reassessment was filed in the district court. But our conclusion is that there is no statute which, by its terms, is applicable to these proceedings, which are in all respects sui generis; that, if any limitation is applied, it will have to be by analogy, which is rarely, if ever, permissible against the public.

In view of the peculiar provisions of the city charter on this subject, it would not be permissible to resort to any supposed analogy in this case. The charter provides that whenever application for judgment is denied by the court for any cause whatever, the city treasurer shall proceed to cause a new assessment to be made. The time within which this is to be done is not prescribed, except that it is to be done without unnecessary delay. It is further provided that whenever judgment has been refused, or an assessment declared void,

"the said lots or parcels of land may be reassessed or newly assessed, from time to time, until each separate lot, piece or parcel of land has paid its proportionate part of the costs and expenses of said improvement,"[2]

and

"no error or omission or irregularity, whether jurisdictional or otherwise, shall prevent a reassessment to the extent of the benefits conferred by such improvement."[3]

The intention seems to be that nothing shall prevent or stand in the way of repeated reassessments until they shall result in the property paying its proper share of the cost of the improvement. We do not mean to be understood as holding that the lapse of time might not be so long, and the laches of the city so great, that the claim would become stale, and the city deemed to have waived or abandoned it; but, so far as we can discover, this is the only limitation that can be applied, and, in our judgment, the facts do not bring this case within it.

Order affirmed.

[2] Sp. Laws 1887, (c. 7, subc. 7, tit. 1, § 60) p. 357.            [3] Id. § 61.