# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

JENNIE E. WILLIAMS and Others v. CITY OF ST. PAUL
and Others.[1]

July 25, 1913.

No. 18,290.[2]

**Local improvement without contract — charter construed.**

1. Section 7, title 3, chapter 6, of the charter of the city of St. Paul construed in connection with an amendment to section 23, adopted in 1912, and *held* that when under such amendment a local improvement is made without letting a contract therefor, the provisions of section 7 requiring, before a contract is executed, the assessment district to be determined, the assessed valuation of the property within the district and the cost of making the improvement to be computed, and providing that in case such cost shall exceed 25 per cent of such assessed valuation the excess shall be paid out of the general fund, do not apply until the work is completed and the cost ascertained. When the work is completed, and the cost ascertained, said provisions become applicable and must be complied with.

**Amendment to charter constitutional.**

2. Said amendment to section 23, as so construed, is constitutional.

**Enforcement of local assessment lien.**

3. The amendment to the charter providing for the enforcement of local assessments is not unconstitutional because in the form of judgment therein prescribed the land on which an instalment is adjudged a lien becomes

<hr>

[1] Reported in 142 N. W. 886.
123 M.—1.

[2] Special term of court.

the property of the city at the end of a year without a sale, the owner having a right to redeem.

**Newspapers of general circulation.**

4. The newspapers in which the amendments were published were papers of "general circulation" as required by the constitution.

**Issue of bonds.**

5. The fact that a resolution authorizing the issuance of bonds was passed by the council before the final order for the improvement had been approved by the mayor and published, did not make the resolution invalid.

Action in the district court for Ramsey county by taxpayers and owners of real estate abutting upon Snelling avenue in the city of St. Paul, for their own benefit and the benefit of all other property owners similarly situated who desired to join therein, to restrain defendant city and its officers from constructing a pavement upon that part of Snelling avenue described in the opinion, from issuing or selling any bonds on account of that improvement, and for a temporary restraining order during the pendency of the action. A motion for a temporary restraining order was heard by Brill, Kelly, Olin B. Lewis, Orr, Dickson and Catlin, JJ., who denied plaintiffs' motion. From that order, plaintiffs appealed. Affirmed.

*J. C. Michael* and *James Cormican,* for appellants.

*O. H. O'Neill,* Corporation Attorney, *J. P. Kyle,* Assistant Corporation Attorney, and *Ambrose Tighe,* for respondents.

BUNN, J.

This is an appeal by plaintiffs from an order of the district court for Ramsey county denying their motion for a temporary injunction. The action in which this motion was made was brought by plaintiffs, taxpayers and owners of real estate abutting on Snelling avenue between University and Grand avenues in the city of St. Paul, to enjoin defendants from paving Snelling avenue under a final order therefor set out in the complaint, and from issuing or selling the bonds of the city on account of such improvement.

The motion for a temporary injunction was based upon the complaint and was heard upon the complaint, answer, and certain affidavits relating to the assessed valuation of abutting property.

The complaint, after setting forth the ownership by plaintiffs of

real estate on the line of the proposed improvement, the corporate character of the defendant city and the official positions of the defendants, mayor, comptroller, city clerk and commissioner of public. works, of the city, alleges that on May 26, 1913, the common council of the city adopted and passed a final order for the paving of Snelling avenue from Grand to University avenue in said city with 3½ inch yellow pine creosoted wood blocks upon a 5 inch Portland cement foundation. This order recites that the estimated. expense of the improvement is $58,000, and that real estate to be assessed therefor can be found benefited to the extent of the cost and expense necessary to be incurred thereby, and then orders that the commissioner of public works proceed to make the improvement, to do the work and employ and use the necessary skill, mechanics and laborers and purchase the necessary materials and supplies therefor, after first advertising for proposals for materials as provided by· law.

The final order further provides that, after the whole of said work shall have been completed and the cost thereof ascertained, and duly certified by the commissioner to be correct and true, the board of public works shall proceed without delay to assess the amount required to pay the damages, costs and expenses, upon the real estate to be benefited by the improvement as provided by law, "it being the opinion of the common council that real estate to· be assessed for such. improvement can be found benefited to the extent of the damages, costs and expenses necessary to be incurred thereby." This final order was approved by the mayor May 27, 1913, and published in the official paper of the city on May 31, 1913. At the time this final order was adopted by the council, it also adopted a resolution ordering the appropriate city officials to issue and sell $58,000 par value of the bonds of said city to provide funds to pay the cost and expense of the improvement as the work should progress. This resolution was approved by the mayor and published in the official paper. It is alleged that the defendants threaten and intend to, unless enjoined, sign, issue, and sell these bonds, complete the paving of Snelling avenue as ordered by the council in the final order, and when so completed, to assess the total cost against real estate abutting on the improvement in order to reimburse the city for the issuance and redemp-

rtion of such bonds. Thus far the allegations of the complaint which we have summarized are admitted by the answer, except that it is denied that the board intends to assess the costs of the improvement upon abutting property only. The allegations of the complaint to the effect that the estimate of $58,000 as the cost of the improvement is far below what the same will actually cost are denied by the answer.

The complaint then sets out section 7, title 3, chapter 6, of the city charter, adopted in 1900, and alleges that this section is still in full force and effect. It alleges that the board of public works has not, as required by said section 7, determined, and has taken no steps to determine, the district within which property will be benefited by said improvement, nor has it computed the total valuation of all or any property within any such district subject to assessment, as required by said section, nor has it computed the cost of making the improvement, as required by section 7. It is alleged that the board cannot, when the work is done by the city itself without letting a contract therefor, determine the cost until the work is fully completed, and that the board does not intend to determine any assessment district, until after the work is fully completed and the total cost certified to it by the commissioner.

It is further alleged that the total assessed valuation of all real estate benefited by the improvement and abutting thereon, does not exceed $128,000, and that the city has not made any appropriation in aid of the improvement.

It is then alleged that the only authority which the city has to make public improvements without letting a contract therefor, and to issue bonds as here proposed, is contained in two amendments to the charter adopted by the voters of the city at an election held May 7, 1912. It is alleged that these amendments were not legally adopted because they were not published in three newspapers of "general circulation."

The answer denies that section 7, title 3, chapter 6, of the charter has any application to any improvement where the work is done by the city without letting a contract therefor, admits that the board has not determined the assessment district, and that it does not intend

to do so, until after the work is fully completed and the total cost thereof ascertained. It alleges that the board did determine that the improvement was necessary and proper, and so reported to the council. It admits an allegation in the complaint that other real property in the vicinity of Snelling avenue, but not abutting thereon, will be benefited by the paving, and in fairness and equity should bear some proportion of the cost, and alleges that the making and spreading of the assessment is a matter within the discretion of the board of public works, and that it is the intention of such board to "do its duty" in reference to the making and spreading of such assessment.

Defendants admit and allege that the improvement is being made under and by virtue of the two amendments adopted in 1912, and the other provisions of the city charter applicable to such improvements. They allege that these amendments, prior to their submission to the voters, were published in three newspapers, each of which was duly qualified under the law as a medium of official and legal publications.

The answer also alleges that the assessed valuation of all the real estate abutting on that portion of Snelling avenue to be paved is $548,070, exclusive of a tract owned by Macalaster College, and assessed at $127,540. The affidavits bore upon the question of the assessed valuation of the abutting property.

1. The first question presented by these pleadings, and raised on this appeal, is whether the admitted fact that the city, in proceeding with this improvement, has not complied with the provisions of section 7, title 3, chapter 6, of the city charter, entitles plaintiffs to an injunction. This section is as follows:

"After a contract for the making of any public improvement for which an assessment is required to be made under the provisions of this charter shall have been awarded and before the same is executed and becomes operative, the board of public works shall determine the district within which property will be specially benefited by said improvement and shall compute the total valuation of all the property within said district subject to assessment for such improvement, according to the last assessed valuation of such property for purposes of general taxation; and said board shall also compute the cost of making such improvement together with the cost of the proceedings

for the collection of the assessment therefor. If such cost shall exceed twenty-five per cent of such total assessed valuation the said board shall then certify the amount of such excess to the common council. The common council shall thereupon be authorized either to make provision for the payment of the amount of such excess out of the general fund of said city or to cancel all proceedings theretofore had or taken relating to the making of such improvement. If the common council shall direct the payment of such excess out of the general fund as aforesaid, then the board of public works shall proceed to assess the balance of the cost of the making of such improvement, together with the cost of collecting the assessment therefor as provided by this charter. Every award of a contract for any such improvement shall be deemed to be made subject to the right of the common council to cancel all proceedings in the manner aforesaid. No error on the part of the board of public works or of any officer of said city in computing the assessed valuation of property or the cost of making any such improvement for the purposes aforesaid shall in any way affect the validity of any of the proceedings relating to the making of any such improvement or the levying and collection of the assessment therefor."

Had a contract for the work of making this improvement been awarded, we think that all of the provisions of the section would have been applicable. It would have been necessary that the board, before the execution of the contract, determine the assessment district, compute the assessed valuation of the property within the district subject to assessment, and also compute the cost of making the improvement, together with the cost of proceedings for the collection of the assessment. If such cost was found to exceed 25 per cent of such total assessed valuation, the common council could order the excess paid out of the general fund, or cancel all proceedings theretofore taken. In no case could the total amount assessed exceed 25 per cent of the assessed valuation of the property within the district specially benefited.

But the amendment to section 23, title 3, chapter 6, authorized the council to order the work done under the direction of the superintendent of public works, without letting a contract therefor, and in

such case provided that the work should be so done. The council ordered this improvement made without letting a contract therefor. The amendment provides that in such case the assessment shall be made *after* the whole of the work is completed and the cost thereof ascertained and reported to the board by the commissioner. When a contract is awarded for an improvement, the assessment is made after the work is placed under contract, and before it is completed, perhaps before it is begun.

It is clear that the cost of the improvement, when the work is not done under a contract specifying the price, cannot be definitely or even approximately known before the completion of the improvement. It is therefore impossible to comply with the requirement of section 7 that the board shall compute the cost before the work is begun. It would be profitless, without knowing the cost of the improvement, to determine the assessment district. It would be of no value to find the assessed valuation of property within the district, because the sole object of this is to ascertain whether the cost of the work exceeds 25 per cent of such assessed valuation, and the cost has not been ascertained. The suggestion that the preliminary estimate of the cost by the commissioner may be taken as a basis for determining the assessment district, the total actual cost, and its relation to the total assessed valuation of the real estate within the district, is not sound.

We are unable to hold that the amendment of 1912 to section 23 repeals by implication section 7. It only purports to amend section 23 of the charter in one particular, that is, making it optional with the council to order the work done by the city force instead of by contract, and providing that in case it is so done, the assessment shall be made *after* the work is completed and the cost ascertained. It was probably not considered by either the proposers of the amendment or by the voters, that the change would have such a vital and dangerous effect as to repeal the limit of 25 per cent which had been in the charter since its adoption in 1900. It is clear to us, as before stated, that this limit of the amount of the assessment to 25 per cent of the assessed valuation of the total property within the assessment district, still applies where the improvement is made under a contract

therefor. If it does not apply, when the city does the work without letting a contract, the result may be discrimination and inequality, not as between property owners assessed for the same improvement, but as between those assessed for an improvement made under contract, and those assessed for another similar improvement, perhaps in the same locality, made without letting a contract. We do not decide that this discrimination would render the amendment unconstitutional and we do not decide that it would not. At least it would produce an inequality that would be deplorable, though it might be legal.

Section 7 and section 23, as amended in 1912, should both be given effect as far as it is possible to do so. Where they are plainly inconsistent, the latter enactment must prevail, and the former give way, unless the amendment violates constitutional provisions. Holding as we do that, when no contract is awarded, the board cannot determine the assessment district, the assessed valuation of the property within it, the cost of the work, and whether it exceeds 25 per cent of the total assessed valuation of the property within the district, until after the work is completed and the cost ascertained, it follows that the provisions of section 7 are inapplicable in so far as they require these things to be done before a contract is executed, and before the cost is ascertained. But it does not follow that these things must not be done before an assessment is made. Indeed it is quite clear that after the commissioner files his report of the cost, the board must then, after notice, determine the assessment district. It must also then, we think, compute the assessed valuation of all the property within the district subject to the assessment, and the total cost of the improvement with the cost of proceedings for the collection of the assessment. When this is done, if the cost exceeds 25 per cent of the total assessed valuation of the property within the district, the excess must be paid out of the general fund of the city.

It is true that this construction of the two charter provisions takes away the alternative that the city has to pay the excess or cancel the proceedings relating to the improvement. As the improvement will then have been completed and paid for, the council could not well abandon the project, and would be obliged to order the excess paid

from the general fund. But this option or alternative is not in the interest of the property owners in the assessment district, and it clearly is not a discrimination of which they can complain, if the option exists when a contract is awarded and does not exist when the work is completed without letting a contract. The limitation of the assessment to 25 per cent of the total assessed valuation of the property deemed specially benefited is what the property owner is interested in. It was for his benefit and is not taken from him. That the district is not fixed, the assessed valuation, and the cost computed, and the amount of the assessment determined, until after the work is completed, are unimportant differences, and in no material way affect the rights of the property owner. As to taking away the option of the city to abandon the improvement, it may well be said that the city has agreed to this when it exercises its option to do the work itself, in advance of any determination whether the cost will exceed 25 per cent of the assessed valuation of the property benefited.

It is true that the final order of the council for the making of the improvement directs that, after the work is completed and the cost thereof ascertained, the board shall proceed to assess the amount upon real estate to be benefited, and that the answer alleges that it is the intention of the board to assess the total cost of the improvement upon the property benefited thereby. This final order follows the language of section 23, as it was both before and after the amendment, and makes no provision for a limit of the amount of the assessment to 25 per cent of the assessed valuation of the property benefited. But the order is no part of the assessment proceedings and does not control the board as to the assessment district or the spreading of the assessment. It should be construed in the light of the 25 per cent limitation, and we think may be construed to be subject to the condition that, if the total cost is found to exceed 25 per cent of the assessed valuation of the property benefited, the excess shall be reported to the council and paid out of the general fund.

We therefore hold that the provisions of section 7, discussed above, are inapplicable when the work is not done by contract, until the work is completed and the cost ascertained, but that they are then applicable and must be followed.

2. The construction of section 7 and section 23 as amended which we have adopted disposes of one of the main constitutional objections to the amendment of 1912 to section 23. This is the contention so vigorously urged by plaintiffs, that the amendment is invalid because it produces discrimination and inequality, in violation of article 1, section 9, of the state constitution requiring equality and uniformity in taxation, and section 1 of the Fourteenth amendment to the Constitution of the United States, forbidding any state to deny to any person the equal protection of the laws. Conceding, without deciding, that the provision of the state Constitution applies to assessments for local improvements, the amendment as we have construed it does not result in inequality or a want of uniformity, nor does it discriminate and thus operate to deny any person the equal protection of the laws. In no case can the assessment exceed benefits, and in every case the property owner has the additional protection of the 25 per cent limit. There is no classification that discriminates in any material respect between persons or classes.

Nor do we sustain the contention that the law and the final order for this improvement are void because the assessment is not limited to benefits, but directs the total cost to be assessed notwithstanding that it may exceed the special benefits, using the benefits merely as a ratio. Neither section 23 nor the final order is fairly open to such a construction. The assessment is limited to the special benefits, and we so construe the law and the order. Nor can we hold that because there is some general benefit from the improvement, the final order is invalid because it ignores this. Presumably the board will do its duty, and assess only to the extent of the special benefits, and not for such general benefit as accrues to the public at large. That this is a local improvement, for which an assessment can be made, there is no question.

We regard the evidence tending to show that the probable cost of the improvement will exceed 25 per cent of the assessed valuation of property abutting on this street as immaterial. It does not show that the cost will probably exceed 25 per cent of the property benefited, as there is no showing that property that does not abut on the street will not bear a portion of the cost. The complaint alleges and

the answer admits that such property will receive a special benefit, and if so, we must presume that it will be included in the assessment district.

3. The next contention of plaintiffs involves the amendment of 1912 concerning the payment and collection of assessments. The amendment provides that all assessments levied under the provisions of the city charter shall be payable in instalments. In the case of all assessments for local improvement, one-fifth is due and payable 60 days after the date of the warrant, and the balance in 5 equal instalments in 1, 2, 3, 4 and 5 years, respectively, after the date of the warrant. It is provided that immediately after any instalment becomes delinquent, the city treasurer shall ask the district court for judgment against the land for the amount of such delinquent instalment, interest and costs. Notice of the application must be given by publication in the official paper and also a postal card notice to the property owner, although the failure to give this postal card notice is not fatal to the judgment. The property owner may file objections and has an opportunity to be heard. If judgment is entered, it is to be provided therein that, at the expiration of one year, the land upon which it is made a lien shall become the property of the city or of the assignee of its judgment. The owner may redeem at any time within three years from the date of the judgment by payment of the amount thereof, with interest at 12 per cent per annum, costs, penalties, and, if the judgment lien has not been assigned by the city, the amount of all delinquent instalments then due and payable.

The amendment does not provide for a sale to satisfy the instalment, interest, costs and penalties. The claim is that in this respect it amounts to a taking and forfeiture of property, in violation of constitutional provisions.

It is urged that section 36, article 4, of the state Constitution requiring all home rule charters to be "in harmony with and subject to the constitution and laws of the state of Minnesota" is violated, as also section 13, article 1, providing that private property shall not be taken for public use without compensation, and section 7, article 1, and section 1 of the Fourteenth amendment to the United States

Constitution, providing that no one shall be deprived of his property without due process of law.

If the point that the owner's property is taken without due process of law is well taken, it would follow that the provision would violate not only the "due process" clauses, but the requirement that home rule charters be in harmony with and subject to the constitution and laws of the state. But if there is due process of law, no constitutional provision is violated by the mere fact that the title passes without a sale. It is true that a sale has been uniformly required in all proceedings to enforce the collection of taxes and assessments, but this is not decisive of the question whether passing title by the judgment without a sale constitutes due process, or violates the "harmony" requirement.

The property owner has had his day in court, his right to be heard, on the application for judgment. We do not see that doing away with the sale deprives him of any substantial right or privilege. Under the law as it was before the amendment, the sale required was of no advantage to the property owner. It had to be for the amount of the assessment, interest and costs, and there could be no surplus coming to the owner. Under the amendment the owner may redeem.

That it is due process of law in the exercise of the power of taxation when one full opportunity to be heard is given, is well settled. City of Duluth v. Dibblee, 62 Minn. 18, 27, 63 N. W. 1117. That the property owner has this opportunity under this amendment has before been stated. We think this constitutes due process of law, and that there is no confiscation or taking without due process solely because there is no sale. 2 Cooley, Taxation, · 862. Black, Tax Titles, §§ 194, 195. It is not a taking of property under a legislative act without an adjudication. There is an adjudication, and it is the judgment which, after a hearing, takes the property, subject to the right of redemption. It is not important in this connection that the rendition of the judgment is not, in the strict sense, "judicial", but a step in an administrative proceeding because the law prescribes what the judgment shall be. The judgment is essential to the passing of title, the property owner has notice and an oppor-

tunity to interpose any defense he has either to the validity or amount of the tax. He has a year after the judgment in which to pay the instalment, and two years after in which to make redemption. We hold that the amendment does not violate any of the constitutional provisions referred to.

4. The point is made that the newspapers in which the two amendments were published were not papers of "general circulation." That they were "legal" newspapers, qualified to publish legal and official notices is established, if not conceded. We hold that they were papers of "general circulation" as required by the constitution.

5. The claim that the resolution of the council authorizing an issue of bonds was invalid because passed before the final order was approved by the mayor or published is not sustained.

We are of the opinion that the learned district judges decided correctly in denying a temporary injunction.

Order affirmed.