## VILLAGE OF EDINA v. THOMAS G. JOSEPH AND ANOTHER. ESTHER HARDY AND OTHERS, INTERVENORS.

119 N. W. (2d) 809.

October 26, 1962—No. 38,522.

---

86

Dorsey, Owen, Barber, Marquart & Windhorst, Henry E. Halladay, and Edward J. Schwartzbauer, for appellant.

Preus, Maag & Abdo and E. John Abdo, for respondents.

NELSON, JUSTICE.

Appeal by the village of Edina from a judgment in the district court entered January 9, 1961, and orders denying a motion for amended findings or a new trial.

Following the adoption of a special assessment by the village council on September 15, 1958, for widening and otherwise improving France Avenue, respondents Thomas G. Joseph and Ralph J. Johnson, owners of property abutting thereon, appealed to the district court pursuant to Minn. St. 1957, § 429.081, in their own behalf and purportedly in behalf of all abutting property owners affected by the assessment. The notice of appeal was duly served and was filed September 30, 1958. Sixty-five other owners filed a motion to intervene in the appeal September 21, 1960, nearly 2 years later. Pursuant thereto the court below permitted them to join in the appeal after the limitation period prescribed by § 429.081 had run, and they also are respondents here.

France Avenue is one of the main north-south traffic arteries of the village of Edina, a southwestern suburb of Minneapolis. It was made a county road in 1891 and remained such until 1934 when it was designated a county state-aid road known as Highway No. 17. A county road is established as a highway and maintained by county funds. A state-aid road is maintained by state revenue from license fees and gasoline taxes.

The portion of France Avenue involved here runs from 54th Street to one-tenth mile beyond 62nd Street. The right-of-way has been 66 feet wide since 1891. The traveled portion of the road was 22 to 24 feet of blacktop surfacing prior to 1957. It was then merely an oiled surface on an old gravel road, and the area of the road outside of the traveled portion was used primarily for parking, as it was unimproved and not suitable for traffic. The record indicates that the road was extremely difficult to maintain. Moving traffic generally confined itself to the blacktop. It served one lane of traffic in each direction with a speed limit of 30 miles per hour.

Officials of the village and Hennepin County began considering the improvement of France Avenue in 1955. The portion from 51st Street to 54th Street had been improved in 1952, and the new im-

provement was considered to be a natural extension of the 1952 improvement. Consequently the roadway on France from 54th Street to a point one-tenth of a mile south of 62nd Street was widened to 44 feet and paved with concrete, and curbs and gutters were installed. Storm sewers were also installed. The improvement, which also included the rebuilding of a bridge, was begun on June 6 and completed September 14, 1957.

Hearings were duly held by the village council to discuss the improvement and the proposed special assessment to finance it. A reduction was made in the proposed assessment as a result of the hearings, the cost of installation of the storm sewers and the rebuilding of the bridge being eliminated from the proposed assessment. On September 15, 1958, after the hearings and further consideration of objections, the council levied an assessment on the abutting properties in an amount equal to one-sixth of the actual paving cost. It had been the longstanding policy of the village to assess the properties abutting on a street like France Avenue only in the amount equal to the cost of the improvement of a normal residential street. The assessment here challenged was less than that cost, since the cost in 1960 of blacktop with curb and gutter on residential streets was $6.50 to $7 per front foot while the assessment against the abutting residential property for this improvement was reduced to $5.60 per front foot for paving and for curb and gutter. This was the *first* special assessment for street surfacing on this portion of France Avenue.

The district court found that as a result of the improvement of France Avenue the flow of traffic moved 11 feet closer to the houses on each side of the street; that the posted speed limit has been increased to 35 miles per hour for a portion of the area and 40 miles per hour in the remainder and that at times traffic exceeds those limits; that the per-axle road limit for trucks has been increased to 9 tons per axle; and that there has been an increase in the number, and a change in the nature, of trucks using the street; that many trucks which previously used 66th Street for travel now use France Avenue; that traffic generally has more than doubled; that vibration from it has become noticeable so that it is felt within some of the houses; that

trash is thrown from car windows and items of rubbish fall from uncovered trucks and trailers; that residents have complained of beer and pop cans, paper bags, napkins, garbage, and other litter accumulating on their property as a result of the increased traffic; that exhaust fumes are now noticeable and irritating; and that noise has substantially increased and some of the adjacent property owners are disturbed thereby.

The expert witnesses for the village testified that the residential property used for single-family dwellings along France Avenue has received many substantial benefits from the improvement and that the benefits were at least equal to the cost of the assessment. Dewey Newcombe, called as an expert witness by respondents, said that in his opinion the property affected had not been benefited. He conceded, however, that reasonable men might reach a different conclusion. The experts called by the village testified that the property put to commercial use was benefited and Newcombe agreed. There has been a significant increase in the construction of multiple dwellings since the improvement, indicating that property was benefited for multiple-dwelling use, and one of the owners agreed.

Respondents contended in the district court that the detriment they suffered was substantially more than any benefits which accrued to them by the improvement. The court agreed, finding that even though respondents' property was benefited in some respects by the improvement, nevertheless, the accumulation of rubbish, the increased traffic, vibrations, and noise were a detriment which exceeded any special benefits.

Prior to the improvement the roadway was comprised of minimum specification blacktop with a minimum amount of base. The edge of the road was sandy and loose. There were chuckholes in the road and when it rained, water would collect in low spots. There were drainage problems which caused the water to flow onto abutting property carrying with it sand, gravel, and roadside debris. Due to the uneven surface of the street, snow removal was difficult.

One of the main contentions of respondents was that the improvement has caused a substantial increase in the traffic on France Avenue.

One respondent testified that in his opinion traffic had increased from 10,000 to 100,000 cars per day. This opinion, however, has no reliable basis. The village introduced a traffic census record made by the Hennepin County Highway Department. It indicates that at a point just south of 54th Street on France Avenue the traffic increased between 1953 and 1957 from 6,334 to 7,828 cars per day, an increase of 1,494. This record was based upon a traffic count made annually by the department for a period of a week. In 1959 the count was 7,912 and in 1960 was 10,967 per day. Witnesses for both sides admitted that the opening of Southdale Shopping Center was a major factor in the increase in traffic along the avenue. Walter J. Petrowski, who supervised the preparation of traffic counts taken by the State Highway Department, testified that some streets running parallel to France Avenue occasionally carried more vehicles than France Avenue. There was also testimony that the rapidly mushrooming population in Edina has had a direct bearing on the increase in traffic.

Howard Shenehon, called as an expert witness by the village, testified that suburbanites constantly demand improvements and it was his conclusion that the improvement has had a desirable effect on property values. Based upon his personal study of properties on France Avenue, it was his opinion that the values of single-family dwellings had increased from 4 to 7 percent since the improvement was made. He testified that it benefited the residential property and had the effect of increasing its value in an amount at least equal to the cost of the improvement. Mr. Newcombe's admission that the property had been benefited for some uses to which it might be put tends to support this opinion.

The village argues here that the trial court exceeded its proper scope of review by making the following findings, which it contends are contradicted by the evidence: (1) That there is no probability that the zoning in the area in question will be changed in the reasonably foreseeable future; (2) that traffic has greatly increased, with attendant hazard and inconvenience to residents on the avenue;[1] (3) that due

---

[1]The court found: "During patrolling by police, traffic generally conforms to the speed regulations. At other times, it moves well in excess of the limits

to the improvement there has been a substantial increase in the number, nature, and speed of the trucks; that such trucks use it earlier in the morning than they did prior to the improvement; (4) that the increased traffic has caused noticeable vibration and irritating exhaust fumes; (5) that trash of various kinds is thrown from car windows and items of rubbish fall from uncovered trucks and trailers accumulating on residents' properties and in the street in front of their homes; and (6) that noise along the avenue has at least tripled, interfering in many ways with the residents' enjoyment of their property.

The village also attacks as contradictory to the evidence the portion of finding XII which states: "Notwithstanding the hurt to the properties which overshadowed any personal benefits to residents in common with all other citizens of Edina using the avenue," and all of finding XIII, which reads as follows:

"The real basis for making the one-third assessment against these properties was that practically the same measurement had been used by the village in assessing premises adjacent to the roadway on some other avenue or avenues, the circumstances and nature of which are not well known to the court. The measure thus used is not a proper one for the imposition of a special assessment. Insofar as any claim may be made that the affected properties may have been benefited by the paving, it is based upon demonstrable mistake of fact; and the assessment is unjust and unfair as to these appellants."

The village claims also that the court erred in holding that the assessment was invalid except as it applied to the installation of con-

---

so that residents along the avenue have come, with reason, to refer to it as a 'speedway.' This has created new dangers for children, and some parents along the avenue have moved away because of these dangers. The road has become hazardous for older persons to walk on, and neighbors going to a nearby church are obliged to walk on the grass of other neighbors to get there. The attraction of the fine road to more motorists has been so substantial that residents going to work in the mornings and returning home in the evenings must wait often for as long as 20 minutes to get in or out of their driveways, whereas they had no trouble before the paving. Traffic funnelled along France Avenue has more than doubled, according to observations of adjacent property holders; and it is increasing."

crete curb and gutter; in making its conclusions of law applicable to the 65 intervenors as well as to the other respondents; in limiting the consideration of benefits to the present principal use of the property—for single-family dwellings—and in basing its decision solely on the fact that it felt there were no benefits for such use; in failing to follow Rule 81.02 of the Rules of Civil Procedure and Minn. St. 480.051 in deciding whether Rule 23.01 modifies and supersedes Minn. St. 1957, § 429.081, under which these appeals from the special assessment were taken; and in determining that it was impracticable for all of the property owners to join in the appeal in the first instance.

The village asserts that the trial court exceeded its proper jurisdiction in setting aside the assessment and contends that the permissible scope of judicial review of a special assessment levy where the statutory requirements have been met is very narrow. The respondents contend that the determination by the council is not conclusive and that the court's function is to determine de novo, not by review.

1. We have said that the assessment and collection of taxes is fundamentally an administrative function; that the confirmation of the assessment and the rendition of judgment for the amount are not "judicial" in the strict sense. They are the steps in an administrative proceeding in which judicial assistance is invoked as a matter of convenience, because with its assistance the rights of the parties and the interests of the public can be best protected and conserved. 13A Dunnell, Dig. (3 ed.) § 6882. The assessment in the instant case is limited to the special benefits found to exist. The fact that there may have been some general benefit from the improvement does not render the final assessment invalid because such general benefit may have been largely ignored. It is presumed that the council will do its duty and assess only to the extent of the special benefits and not for such general benefits as accrue to the public at large. That the improvement and the assessment therefor were such as the statute contemplates the council may make in their legislative and administrative capacity is without question.[2]

---

[2]Minn. St. c. 429; Williams v. City of St. Paul, 123 Minn. 1, 142 N. W. 886.

2. We have repeatedly said with respect to the decisions of municipal and other governmental bodies having the duty of making decisions involving judgment and discretion that it is not the province of the court to substitute its judgment for that of the body making such a decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination. See, In re Wilson, 32 Minn. 145, 148, 19 N. W. 723, 725; Zion Evangelical Lutheran Church v. City of Detroit Lakes, 221 Minn. 55, 58, 21 N. W. (2d) 203, 205; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 225, 176 N. W. 759, 761; 13A Dunnell, Dig. (3 ed.) § 6525c.

3. Minn. St. c. 429 sets forth procedural requirements relative to local improvements and special assessments. Section 429.081 provides that any person aggrieved may appeal after the adoption of a special assessment. It states:

"Within 20 days after the adoption of the assessment, any person aggrieved[3] may appeal to the district court by serving a notice upon the mayor or clerk of the municipality. * * * All objections to the assessment shall be deemed waived unless presented on such appeal."[4]

Property owners are not entitled to an appeal from an assessment as a matter of right, but the right of appeal is almost universally allowed by statute or charter. Conditions permitting appeals, their

---

[3]A "person aggrieved" who is entitled to a review of an assessment is one whose pecuniary interests are or may be adversely affected. An owner of property burdened with an unlawful tax comes within this description. People ex rel. Bingham Operating Corp. v. Eyrich, 265 App. Div. 562, 40 N. Y. S. (2d) 33, affirming Id. 179 Misc. 197, 38 N. Y. S. (2d) 326.

[4]The portions of this section quoted were unaffected by L. 1961, c. 525, § 9, which amended Minn. St. 1957, § 429.081, by adding that the court "shall either affirm the assessment or set it aside and order a reassessment as provided in section 429.071, subdivision 2." L. 1961, c. 525, expressly provided that it would not affect any improvement or assessment proceedings commenced prior to January 1, 1962.

course, and the time and manner in which they are to be allowed and perfected are of statutory origin, as such appeals were unknown to the common law. Statutes allowing appeals from assessments against property for special improvements are mandatory and their requirements must be strictly complied with. These terms will not be extended by construction. 14 McQuillin, Municipal Corporations (3 ed.) § 38.231; Board of Park Commrs. v. Bremner, 190 Minn. 534, 252 N. W. 451, 253 N. W. 761.[5]

4. The respondents make no charges of fraud, nor do they claim that the statutory requirement of notice to the abutting owners was lacking. It is undisputed that the village council also held hearings as required by statute, at which interested property owners were heard, resulting in a reduction in the proposed assessment. It is clear, then, that the owners had the benefit of every statutory safeguard, and the opportunity to be heard, long before the appeal to the district court was taken.

5. As early as State ex rel. Burger v. District Court, 33 Minn. 295, 304, 23 N. W. 222, 226, this court said:

"* * * Amid the conflict of opinions it is easy to see that there may have been errors of judgment on the part of the assessors. This is necessarily incident to the performance of such duties; but we think the assessment is not shown to have been fraudulent, or to have proceeded upon the wrong rule in including, excluding, or valuing property; nor does it appear that there was any lack of diligence in considering the nature of the interests of owners, or the condition or situation of the property assessed. The decision of the board on these questions is therefore conclusive."

Again, in State ex rel. Minnesota Transfer Ry. Co. v. District Court, 68 Minn. 242, 245, 71 N. W. 27, this court said:

"* * * the judgment of the board of public works [of St. Paul]

---

[5]This court held in Rosso v. Village of Brooklyn Center, 214 Minn. 364, 8 N. W. (2d) 219, that the statute allowing direct appeals to district court to attack general assessments or the proceedings in connection therewith applies also to special assessments.

as to what property is benefited, and how much it is benefited, is final and conclusive, and cannot be reviewed by the courts unless it is shown to be fraudulent in fact, or to have been made up upon demonstrable mistake of fact, or that in making it the board of public works applied an illegal principle or an erroneous rule of law."

To the same effect are State ex rel. Wheeler v. District Court, 80 Minn. 293, 83 N. W. 183; and State ex rel. Hughes v. District Court, 95 Minn. 70, 103 N. W. 744.

It was held in In re Assessment for Improving Superior Street, 172 Minn. 554, 216 N. W. 318, that when an assessment for a local improvement has been made by the proper municipal board or officers under due legislative authority and in the regular course of procedure such assessment is prima facie valid, and the burden rests upon the objector to prove its invalidity. This court also held in that case that an assessment so made, in the absence of fraud, mistake, or illegality, is conclusive upon the courts, except that the questions of whether the property assessed received any special benefit from the improvement and whether the assessment made exceeds to a substantial amount the special benefits received are open for review. This decision was followed in Qvale v. City of Willmar, 223 Minn. 51, 25 N. W. (2d) 699. In In re Assessment for Paving Concord Street, 148 Minn. 329, 181 N. W. 859, and again in the Qvale case we said that the principle that the apportionment of assessments is a legislative function is to be given effect.

6. Mr. Justice Magney, speaking for the court in the Qvale case, said (223 Minn. 59, 25 N. W. [2d] 704):

"* * * Where reasonable men differ, the determination of the assessing officer will be upheld. The apportionment of assessments is a legislative function and under the facts of this case must be given effect."

7. Respondents claim that the present residential use of property is controlling as to benefits. This has never been the law in this state. The doctrine that the present use is not controlling in determining benefits in a special assessment levy has often been expressed by this court beginning with our early decisions and repeated in In re Assessment for Improving Superior Street, *supra,* and Qvale v. City of

Willmar, *supra*. In the Qvale case Mr. Justice Magney also quoted with approval the following statements from 48 Am. Jur., Special or Local Assessments, §§ 29 and 23:

"The question of the existence and extent of special benefit resulting from a public improvement for which a special assessment is made is one of fact, legislative or administrative rather than judicial in character, and the determination of such question by the legislature or by the body authorized to act in the premises is conclusive on the property owners and on the courts, unless it is palpably arbitrary or grossly unequal and confiscatory, in which case judicial relief may be had against its enforcement."

"In determining whether an improvement does or does not benefit property within the assessment district, *the land should be considered simply in its general relations and apart from its particular use at the time; and an assessment, otherwise legal, is not void because the lot is not benefited by the improvement, owing to its present particular use. The benefit is presumed to inure not to the present use, but to the property itself.*" (Italics supplied.)

In Louisville & Nashville R. Co. v. Barber Asphalt Paving Co. 197 U. S. 430, 25 S. Ct. 466, 49 L. ed. 819, it was held that in determining whether an improvement does or does not benefit property within the assessment district the land should be considered simply in its general relations and apart from its particular use at the time; and an assessment, otherwise legal, for grading, paving, and curbing an adjoining street was not void under the Fourteenth Amendment because the lot was not benefited by the improvement owing to its present particular use. In this case Mr. Justice Holmes said (197 U. S. 433, 25 S. Ct. 467, 49 L. ed. 821):

"* * * The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects at least it is peculiarly a thing to be decided by those who make the law."

Minn. Const. art. 9, § 1, empowers the legislature to authorize municipal corporations to levy and collect assessments for local improve-

ments upon property benefited thereby without regard to a cash valuation. In State ex rel. Stateler v. Reis, 38 Minn. 371, 375, 38 N. W. 97, 99, we held that "local improvements" includes "anything for which a tax by special assessment might, under the general rules of law, be imposed,—that is, any public purpose from which the property assessed derives a benefit special and local in its nature." See, In re Improvement of Lake of the Isles Park, 152 Minn. 29, 188 N. W. 54; Rogers v. City of St. Paul, 22 Minn. 494.

8. The record does not support the court's finding that the measure used in levying the assessment was not a proper one and that any claim that the affected properties have been benefited by the paving and improvement is based upon demonstrable mistake of fact. There was testimony indicating that the improvement resulted in special benefit to respondents' properties and that the assessment was made on that basis but calculated on the basis of frontage. We have long since decided in this state that use of a front-foot basis in making an assessment does not demonstrate, nor tend to prove, that the assessment was made without regard to benefits. In Qvale v. City of Willmar, *supra,* we quoted with approval the following from State ex rel. Wheeler v. District Court, 80 Minn. 293, 300, 83 N. W. 183, 184:

"* * * But the fact that the assessment was uniform per front foot as against each abutting lot does not demonstrate, nor does it tend to prove, that the assessment was made without regard to benefits. Its tendency is to show that each and every lot along the entire improvement was benefited equally and exactly the same per front foot, hence the assessment should be precisely the same."

In State ex rel. Oliver Iron Min. Co. v. City of Ely, 129 Minn. 40, 151 N. W. 545, Ann. Cas. 1916B, 189, it was held that levying special assessments according to the frontage rule does not violate our own constitution nor U. S. Const. Amend. XIV. See, also, State v. Robert P. Lewis Co. 72 Minn. 87, 75 N. W. 108, 42 L. R. A. 639.

9. We stated in Mayer v. City of Shakopee, 114 Minn. 80, 130 N. W. 77, that an assessment can be made only to the extent of special benefits and must be distributed in proportion to the benefits received; that the power delegated to a subordinate tribunal to determine these

questions calls for an exercise of judgment; and that when an arbitrary rule is followed, without regard to proximity, location, or conditions, the assessment is void. We upheld the assessment there challenged, concluding (114 Minn. 85, 130 N. W. 79):

"The plan as a whole seems fairly equitable. Some inequities must always exist in levying assessments and taxes."

The basis and justification of a special assessment are benefits to the property affected. Of course, an assessment may not be arbitrary, capricious, or unreasonable. The law in this state does not require that a special assessment correspond in exactness with the benefits received. Precise accuracy has never been required, and the determination of the extent of benefits has constitutionally and by legislation been committed to some tribunal, in this case the village council, as the assessment board. Benefits which may be demonstrated by a mathematical exactness are not always required in order to support an assessment. The most that any member of an assessing tribunal can do is to estimate the benefits to each tract of real estate upon as uniform a plan as can be used in the light afforded by available information.

Hearings were afforded the respondents by the council before it adopted the assessment of $5.60 per front foot. It must be presumed that the authorities arrived at this final amount with reference only to the special benefits accruing to the properties assessed and that the owners are required to contribute only in proportion as the properties benefited.

10. Since this court has adopted the rule that in determining whether an improvement does benefit property in the assessment district, the land should be considered simply in its general relations, and apart from its particular use at the time, the benefits being presumed to inure to the properties themselves, the evidence fails to support the finding as to detriment to respondents' properties or its conclusion that the assessment was invalid except for the amount levied for curbs and gutters. The inconveniences shown are simply those accompanying progress and modern development in every growing city. They can be alleviated by the methods adopted in other muni-

cipalities which have been expanding and have undertaken similar developments.

Moreover, proof of the claim that the traffic increase was due to the improvement is not sufficient to invalidate the assessment. On the contrary, it stands admitted that the development and growth of Southdale may well be an important factor in the traffic increase. The record shows study and deliberation by the village council in evaluating the benefits to the abutting property from the improvement. A fair consideration of the record leads to the conclusion that only special benefits were assessed and that these were in each instance at least equal to the amount of the assessment.

In Board of Park Commrs. v. Bremner, *supra,* this court made it plain that too narrow a construction should not be placed upon the term "special benefits" in connection with a public improvement which in fact is found to enhance the market value of the property. We also noted the distinction between the term "special benefits" as applied to tax proceedings of the character here involved and as applied to an offset against damages when property is taken under the power of eminent domain.

This court has said that a rule for determining benefits may properly ignore both use and present value. In re Improvement of Third Street, 185 Minn. 170, 240 N. W. 355. See, also, In re Assessment for Widening East Fourth Street, 173 Minn. 67, 216 N. W. 607; In re Assessment for Improving Superior Street, *supra*; Louisville & Nashville R. Co. v. Barber Asphalt Paving Co. *supra*; 48 Am. Jur., Special or Local Assessments, § 23.

As indicated by the foregoing decisions, it is enough that the land could be turned to purposes for which the improvement would increase its value. In determining whether abutting property has been benefited by an improvement, neither this court nor the United States Supreme Court has given much consideration to improvements on the property or to its present use. The test is not whether the property is enhanced in value for the particular purposes to which it is devoted at the time of the assessment but whether it is enhanced in value for any purpose.

11. The village contends that the intervenors are not properly before the court and are not entitled to the benefit of any judgment. It contends that Appendix B(2), Rules of Civil Procedure, which lists statutes superseded by the rules, clearly shows that Minn. St. 429.081 is not superseded or in any way changed by the rules. This is obviously correct. Rule 81.02 provides:

"These rules do not supersede the provisions of statutes relating to appeals to the district courts."

See, 3 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 81.02, p. 494.

The authorities generally indicate that relief against erroneous or illegal assessments will not be granted by a court of equity, if the property owner has an adequate remedy at law. If the statute or charter provides a remedy by appeal or otherwise, such remedy is generally exclusive and will preclude any resort to equity. The appeal provisions under §§ 429.036 and 429.081 furnish adequate remedies at law. See, Rosso v. Village of Brooklyn Center, *supra*; Schultz v. City of North Mankato, 176 Minn. 76, 222 N. W. 518; and 14 McQuillin, Municipal Corporations (3 ed.) § 38.210.

12. The right to institute class or derivative actions is governed by the general principles of the law of procedure as is the right to intervene. No authority has been cited by the respondents supporting the order of intervention entered by the court below or sustaining the right of two property owners to institute a class action under the statute governing the appeal to the district court.

In Hansberry v. Lee, 311 U. S. 32, 41, 61 S. Ct. 115, 118, 85 L. ed. 22, 27, 132 A. L. R. 741, 746, Mr. Justice Stone, speaking for the court, discussed the basic requirements for instituting a class suit as follows:

"The class suit was an invention of equity to enable it to proceed to a decree in suits where *the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable.* Courts are not infrequently called upon to proceed with causes in which the number

of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree. [Citing cases.]" (Italics supplied.)

In Rockwell v. City of Junction City, 92 Kan. 513, 141 P. 299, it was held that the action to enjoin the paving of a street and the collection of a special assessment therefor brought by one property owner before the 30-day statute of limitations had run did not inure to the benefit of other owners who attempted to intervene after the expiration of the statutory period. The court quoted with approval the rule stated in Note, 15 Ann. Cas. 664, 665:

"Where no community of interest or privity of estate exists between the intervener and another party or parties to the original action, the commencement of the action before the statute of limitations has run, does not inure to the benefit of a person who intervenes after the time when an action would be barred."

The conditions outlined in the Hansberry case were not present on the appeal to the district court by respondents here. The record indicates that all parties entitled to notice of the proceedings before the village council received such notice and were given the opportunity to be heard. Each property owner affected had the right of appeal under the provisions of c. 429.

It seems clear that a class suit is no more available in a proceeding involving a special assessment levy under the provisions of c. 429 than it is in a ditch proceeding under the drainage laws of this state. The circumstance of ownership of abutting properties affected by the assessment does not give owners the right to institute a class action, nor does it permit any aggrieved party to intervene after he has let the time for appeal expire.

It appears that it has been the policy of the village to assess the properties abutting on a street like France Avenue only in an amount equal to the cost of the improvement of a normal residential street. That course was followed in the instant proceeding.

Under the rules applicable to assessment proceedings in this state the record supports the contention of the village that the improvements had the effect of increasing the market value of residential properties used for single-family purposes at least by an amount equal to the assessment for the improvement and of increasing the market value of other properties to an even greater extent. Since our decisions make it clear that the present residential use of property is not controlling in determining whether it has received special benefits, the record supports the action taken by the village council. Under the circumstances their determination in the matter is conclusive, respondents not having established that the assessment was made without integrity and faithful consideration by the municipal authorities or that it resulted from the adoption of inapplicable rules of law. The judgment of the district court should be and is reversed.

Reversed and remanded with directions to vacate the judgment appealed from and to enter judgment in accordance with this opinion.

ON APPEAL FROM TAXATION OF COSTS.

On December 21, 1962, the following opinion was filed:

PER CURIAM.

On this appeal from the clerk's taxation of costs, plaintiffs and intervenors, respondents in this court, attempt to evade taxation of costs and disbursements on the ground that the question involved is public in nature. In the alternative they contend that if costs and disbursements are to be taxed against them, such costs and disbursements should be proportionately allotted among them. They state that the appeal involved the right to assess specific parcels of property owned by each of them.

The subject of costs and disbursements in this court is governed entirely by Minn. St. c. 607. Section 607.01 states in part:

"In all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred."

It has been held that "[t]he language of this statute plainly gives this court no discretion in the allowance, disallowance, or apportionment of disbursements necessarily paid or incurred." Molto v. Molto, 242 Minn. 112, 118, 64 N. W. (2d) 154, 158, citing Collins v. Collins, 221 Minn. 343, 22 N. W. (2d) 168, 23 N. W. (2d) 9; Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647; Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417. In Hess v. G. N. Ry. Co. 98 Minn. 198, 201, 108 N. W. 7, 803, we stated:

"* * * The matter of disbursements on appeals to this court between adverse parties in actions at law is purely statutory. The statutes provide that the losing party shall pay the disbursements necessarily incurred by the prevailing party. *The court has no discretion either in the allowance, disallowance, or apportionment of the same, and the only question involved in this case is whether the items sought to be taxed were incurred by defendant in consequence of plaintiff's appeal.*" (Italics supplied.)

That statement was quoted with approval in LeMire v. Nelson, 238 Minn. 501, 507, 58 N. W. (2d) 189, 193.

There is no alternative but to allow the village of Edina as the prevailing party to proceed for its costs and disbursements against any or all of the opposing parties, in such manner as it deems fit. It is not the duty of this court to determine who of the 67 losing parties are to pay or in what amounts. One appeal was taken against all of these parties; the case was presented here on a single record; the briefs filed by the village were addressed to all plaintiffs and intervenors; the same attorneys represented all of them; and but one argument was made in this court. The controversy presented one action. The losing parties must, therefore, determine among themselves how they will divide the total cost.

We have been referred to State ex rel. Village of Orono v. Village of Long Lake, 247 Minn. 264, 77 N. W. (2d) 46, as authority for the contention that costs and disbursements should not have been taxed

because a public question was involved. That case, however, is not in point in this controversy as the parties involved there were municipalities, while appellants here are individual property owners appealing from assessments against private property.

Clerk's taxation of costs affirmed.