JOINT INDEPENDENT SCHOOL DISTRICT NO. 287 (SUBURBAN HENNEPIN COUNTY AREA VOCATIONAL-TECHNICAL SCHOOLS), Appellant,

v.

**CITY OF BROOKLYN PARK, Respondent.**

**No. 46971.**

Supreme Court of Minnesota.

July 15, 1977.

---

LeVander, Zimpfer, Buegler & Zotaley and Paul W. Buegler, Minneapolis, for appellant.

LeFevere, Lefler, Pearson, O'Brien & Drawz, Curtis A. Pearson, John E. Drawz and David J. Kennedy, Minneapolis, for respondent.

Heard before KELLY, TODD and YET-KA, JJ., and considered and decided by the court en banc.

TODD, Justice.

The city of Brooklyn Park levied a special assessment against property owned by the Joint Independent School District No. 287 (JISD) for certain sewer and water improvements to the property. JISD challenged the special assessment adopted by Brooklyn Park through an appeal to the

Hennepin County District Court pursuant to Minn.St. 429.081. After a lengthy trial, the lower court entered a judgment in favor of Brooklyn Park, determining that the special assessments levied against the JISD property were valid and did not exceed the special benefits. We affirm.

JISD was organized in 1969 by the agreement of 13 independent school districts situated in suburban Hennepin County pursuant to Minn.St. 471.59. JISD also serves in an auxiliary capacity to the member school districts by offering vocational courses on a part-time basis to students regularly enrolled in the several independent school districts. JISD's north campus consists of 97.-42 acres which is situated entirely within the city of Brooklyn Park.

Brooklyn Park is divided into four sanitary sewer districts, each of which approximates a geographically self-contained drainage area. JISD's north campus is located in District No. 3. In 1962, Brooklyn Park constructed a sewer trunk designed to have a sufficient capacity, grade, and depth to serve Sewer Districts Nos. 1, 2, and 3. A portion of the total cost of the 1962 trunk project ($425,600) was attributed to the oversizing and other adjustments necessary to eventually serve District No. 3. Assessment of this cost against lands situated in District No. 3 was deferred, pursuant to Minn.St. 429.051, because neither the trunk nor subtrunk sewers were extended into the district at this time.

The Metropolitan Waste Control Commission (Commission) [1] acquired the 1962 trunk and in 1970 commenced the construction of the 1962 trunk sewer into and through District No. 3. The sewer project (70–15) is commonly referred to as the Maple Grove-Brooklyn Park Interceptor (interceptor trunk), and it serves Sewer District No. 3 as well as Maple Grove and Osseo. Also, beginning in 1970, Brooklyn Park constructed subtrunk and lateral sewer lines into District No. 3 as well as a water carrying system consisting of water trunk and lateral lines.

1. The Metropolitan Waste Control Commission was originally referred to as the Metropolitan Sewer Service Board in the legislation establishing the governmental entity. L.1969, c. 449. The Metropolitan Waste Control Commission was established by L.1974, c. 422.

Brooklyn Park determined to fix the interceptor assessment at $375 per acre for land situated in District No. 3 and to assess a connection charge of $210 per acre, collectible when the land is connected to the sewer system. The sewer and water trunk and subtrunk assessments were determined on a per-acre basis, while the sewer and water lateral benefits were made on a lot-unit basis.

Upon completion of the sewer and water construction, Brooklyn Park levied a special assessment in the amount of $206,000 for the improvements against the JISD property. JISD challenged the validity of the special assessment through an appeal to the district court. The trial court determined that the special assessments equaled the special benefits to the JISD property resulting from the improvements and thereby affirmed, in substantial part,[2] the special assessment of $206,000.

■ JISD raises the following issues on appeal: (1) Whether JISD is an "instrumentality" as the term is used in Minn.St. 435.-19; (2) whether the special assessments levied against the JISD property exceed the special benefits received by the land so assessed; (3) whether the Maple Grove-Brooklyn Park Interceptor is a local improvement; and (4) whether the special assessments levied by Brooklyn Park and the procedures employed in arriving at the amount of special assessment are arbitrary and unreasonable.

1. Minn.St. 435.19, subd. 2, provides in part:

"In the case of property owned by the state or any instrumentality thereof, the governing body of the city or town may determine the amount that would have been assessed had the land been privately owned. * * * *No instrumentality, department or agency shall be bound by the determination of the governing body and may pay from available funds or recommend payment in such lesser amount as it determines is the measure of the benefit received by the land from the improvement.*" (Italics supplied.)

If JISD is considered to be an instrumentality within the meaning of the term as it is used in this statute, it would be allowed to make its own independent determination of the amount to be paid the city as compensation for the special improvements. Minn.St. 435.19, subd. 2. However, we are in agreement with the trial court that JISD rather than being an "instrumentality" is a "governmental unit" under § 435.19, subd. 1:

"* * * A 'governmental unit' means a county, city, town, public corporation, *a school district* and any other political subdivision, except a city of the first class operating under a home rule charter and the school district, park board or other board or department of such city operating under such charter." (Italics supplied.)

■ In arriving at this determination, initial reference is made to JISD's name which indicates that it is a school district and as such includible under § 435.19, subd. 1, as a "governmental unit." Additionally, JISD was formed by an agreement between 13 independent school districts entered into pursuant to Minn.St. 471.59. This statute allows governmental entities to join together as a single entity in order to accomplish a common goal. The consolidated group formed pursuant to § 471.59, subd. 1, can exercise any power common to the contracting parties. Accordingly, the parameters of the group's (JISD) powers are determined with reference to the powers possessed by the individual participants—in this case, school districts.

Thus, we conclude that JISD is a school district which is one of the political entities enumerated in § 435.19, subd. 1, as a "governmental unit." Since JISD is a "governmental unit" and not an "instrumentality," it is subject to Brooklyn Park's determination of the amount of the special assessment in this case.

2. The trial court vacated the Brooklyn Park's special assessment levied against JISD property insofar as it related to a parcel of land upon which a water tower was located.

■ 2. As its primary argument, JISD contends that the special assessment of $206,000 levied against its property is invalid because the assessment exceeds the special benefits inuring to the property from the improvement. The general principle in the law of special assessments is that a municipality cannot levy a special assessment that exceeds the special benefit which the property derives from the improvement. See, *Village of Edina v. Joseph*, 264 Minn. 84, 119 N.W.2d 809 (1962).

■ The levying of a special assessment is a legislative act. When an assessment is regularly made, it is presumed to be lawful and correct and the burden of proof rests upon the objector to demonstrate its invalidity. *In re Appeals by Am. Oil Co. v. City of St. Cloud*, 295 Minn. 428, 206 N.W.2d 31 (1973); *In re Improvement of Superior Street, Duluth*, 172 Minn. 554, 216 N.W. 318 (1927). The restraints upon a municipality's power of special assessment were adequately summarized in *Carlson-Lang Realty Co. v. City of Windom*, Minn., 240 N.W.2d 517, 519 (1976):

"We have stated the limitations on a city's power of special assessment to be these: (a) The land must receive a special benefit from the improvement being constructed, (b) the assessment must be uniform upon the same class of property, and (c) the assessment may not exceed the special benefit. *Quality Homes, Inc. v. Village of New Brighton*, 289 Minn. 274, 183 N.W.2d 555 (1971); *State ex rel. Oliver Iron Min. Co. v. City of Ely*, 129 Minn. 40, 47, 151 N.W. 545, 547 (1915)."

■ However, the questions of whether the property assessed received any special benefit and whether the assessment exceeds the special benefit are always open for review. *E. H. Willmus Prop. Inc. v. Village of New Brighton*, 293 Minn. 356, 199 N.W.2d 435 (1972). In order to determine the value of a special benefit, the taxing authority must consider what increase there has been in the market value of the land resulting from the improvement. *Gibbish v. Village of Burnsville*, 294 Minn. 318, 200 N.W.2d 310 (1972); *City of St. Louis Park*

*v. Engell*, 283 Minn. 309, 168 N.W.2d 3 (1969). The difference in market value should be calculated by determining "what a willing buyer would pay a willing seller for the property before, and then after, the improvement has been constructed." *Carlson-Lang Realty Co. v. City of Windom*, Minn., 240 N.W.2d 519.

■ In the present case, Brooklyn Park levied a special assessment in the amount of $206,000 for the sewer and water improvements afforded the JISD property. At trial, JISD elicited expert testimony from a professional engineer and an experienced real estate appraiser concerning the value of the special benefits to its property resulting from the improvements. The professional engineer testified that the market value of the property was increased by approximately $62,000 because of the sewer and water improvements, while the real estate appraiser placed the increase in market value at approximately $73,000. However, the testimony of both experts indicates that their appraisals and computation of the benefits received by the property were based solely upon the present use of the property.

In *Village of Edina v. Joseph*, 264 Minn. 84, 95, 119 N.W.2d 809, 817, this court held that the present use of a parcel of property is not controlling in determining the special benefits resulting from an improvement:

"Respondents claim that the present residential use of property is controlling as to benefits. This has never been the law in this state. The doctrine that the present use is not controlling in determining benefits in a special assessment levy has often been expressed by this court beginning with our early decisions and repeated in *In re Assessment for Improving Superior Street* [172 Minn. 554, 216 N.W. 318 (1927)] and *Qvale v. City of Willmar* [223 Minn. 51, 25 N.W.2d 699 (1946)]. In the *Qvale* case Mr. Justice Magney also quoted with approval the following statements from 48 Am.Jur., Special or Local Assessments, §§ 29 and 23:

\*     \*     \*     \*     \*     \*

" 'In determining whether an improvement does or does not benefit property within the assessment district, *the land should be considered simply in its general relations and apart from its particular use at the time; and an assessment, otherwise legal, is not void because the lot is not benefited by the improvement, owing to its present particular use. The benefit is presumed to inure not to the present use, but to the property itself.'* " Accord, *In re Appeals by Am. Oil Co. v. City of St. Cloud, supra.*

Brooklyn Park also introduced expert testimony from an experienced real estate appraiser concerning the valuation of the special benefits to the JISD property from the improvements. He testified that the market value of the JISD property increased by approximately $206,000 due to the addition of the sewer and water utilities. In arriving at this figure, Brooklyn Park's expert witness incorporated not only its present use but also the possibility that the land may be used for other purposes in the future which the other experts failed to do.

It is obvious that the expert witnesses do disagree concerning the value of the special benefits inuring to the JISD property. However, after an examination of the record and consideration of the respective opinions of the expert witnesses, we are inescapably led to the conclusion that the amount of the special assessment does not exceed the special benefits in this case.

■ 3. The Maple Grove-Brooklyn Park Interceptor under consideration in this case is owned by the Commission. A portion of the $206,000 special assessment against the JISD property relates to the cost of the interceptor trunk. JISD argues that since the Commission owns the interceptor trunk, it is not an improvement constructed by Brooklyn Park under Minn.St. c. 429 and therefore the city cannot include a portion of the cost of this particular improvement in the special assessment.

We conclude that this argument is without merit. Recently, in *In re Village of Burnsville,* Minn., 245 N.W.2d 445, 448 (1976), this court addressed an identical argument in a special assessment case and stated:

"Kraemer argues, however, that this project [an interceptor trunk owned by the Commission] is not an 'improvement' constructed by Burnsville under c. 429, and that the assessment procedure limited to such improvements cannot thus be used in this case. That argument must fail as § 473.521, subd. 3, grants a governmental unit the power to assess in situations in which it was not empowered to assess before. Specifically, such a unit is granted the power to assess '[t]o accomplish any duty imposed on it' by the MWCC. Under c. 429, assessments may well be limited to pay for 'improvements' but under § 473.521, subd. 3, they are not so limited. Similarly, Kraemer's argument that there was no 'cost' or 'expense' to Burnsville to justify the assessment is without merit. Under § 473.521, subd. 3, there need not be a 'cost' or 'expense,' as assessments may be levied in order '[t]o accomplish any duty imposed' by MWCC. Here, the duty imposed is to pay usage and SAC charges. Actually, if these two arguments of Kraemer's were accepted, § 473.521, subd. 3, would have little meaning."

We hold that the determination reached by the court in the aforementioned decision is dispositive of the issue and therefore reject JISD's argument in the present case.

■ 4. Finally, JISD argues that procedures employed by Brooklyn Park in arriving at the amount of the special assessment were arbitrary and unreasonable. This argument is unsubstantiated by the record and is without merit.

Affirmed.