In the Matter of the Appeal of Lavern L. EWERT and Elaine L. Ewert, His Wife, and Einar R. Olson and Irene F. Olson, His Wife, from the Assessments Adopted on September 11, 1975, by the City Council of the City of Winthrop, for Improvements of Certain Lands, Appellants,

v.

CITY OF WINTHROP, Respondent.

No. 47976.

Supreme Court of Minnesota.

April 13, 1979.

MacKenzie, Gustafson, Litynski & Lucas and Malcolm K. MacKenzie, Gaylord, for appellants.

Thomas G. McCarthy, Winthrop, for respondent.

Heard before SHERAN, C. J., and YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal by appellants Lavern L. Ewert and Elaine L. Ewert, his wife, and Einar R. Olson and Irene Olson, his wife, from an order of the district court of Sibley County, dated October 4, 1976, finding that special assessments adopted by the city council of respondent city of Winthrop "did not exceed the special benefits conferred upon the lands of the appellants," and judgment entered on April 25, 1977. We reverse and remand.

The legal issues appellants raise are:

1. Did the increase in market value resulting from the improvements to appellants' lots equal or exceed the amount of the assessments levied for those improvements?

2. Is one who appeals from a special assessment under Minn.St. 429.081 entitled to a jury trial?

Appellants Einar and Irene Olson platted First Highland Addition in 1957 and the adjoining Second Highland Addition in 1959. The Olsons sold off several lots in Highland First Addition, primarily to churches, and then platted the Second Highland Addition and sold Block 1 to an army reserve unit. In 1972 they sold remaining lots in both additions to their daughter and son-in-law, the Ewerts, and between 1973 and 1975 the Ewerts made the following sales:

| Date | Lot Description | | Price |
|------|-----------------|---|-------|
| 1973 | Pts. 2 & 3, B. 7 | (100' × 105') | $1,000 |
| 1973 | Pts. 6 & 7, B. 7 | (100' × 105') | 1,000 |
| 1973 | Pts. 5 & 6, B. 7 | (100' × 105') | 1,000 |
| 1974 | 8 & pt. 7, B. 6 | (100' × 105') | 2,200 |
| 1975 | 1 & 2, B. 3 | (100' × 165') | 2,700 |

All of these sales were made before installation of the street and utility improvements. Prior to installation of the improvements, Ewert was able to provide utilities to the lots sold by paying a $300 hook-up charge to the city as utilities were already installed as far as Olson Avenue.

In 1974 and 1975, the Winthrop City Council decided to install all improvements in the entire city where they were not already installed. These improvements included installation of curb and gutter, bituminous surfacing of streets, sanitary sewer, water, and stubbing services into adjacent lots. The project was designated Street Improvement Project No. 1974–1.

At the time the Ewerts owned and were assessed for 13 lots and 3 fractional lots in Highland First Addition, which were being used (both before and after installation) as residential building lots. These 13 lots were being parcelled and sold as 100-foot frontage lots and would have therefore been usable as nine 100-foot lots of depths varying from 105 feet to 165 feet. One lot (Lot 8, Block 4) would have been unsuitable for residential use. They also owned and were assessed for what would amount to five 100-foot by 140-foot lots, one lot 84.6 feet by 200 feet, and eight lots between Western Avenue and Highway 15, in Second Highland Addition. Except for one other small area, the Ewerts' lots in the two Highland Additions were the only lots in the city where all services were installed and assessed.

Prior to the commencement of the construction of improvements and the levying of the assessments on their property, the Ewerts contacted the city council at meetings and the individual members and the mayor several times regarding the need for the improvements and the cost. They filed a formal protest to the amount of the proposed assessment at the public hearing of the Winthrop City Council.

The person who prepared the assessment rolls and the mayor each testified that he did not make a before and after market improvement valuation study regarding the appellants' assessed property. No evidence was presented by either party on whether

the voting members of the city council took such before and after valuations into consideration when they adopted the assessment roll.

The total assessments for appellants' property was $59,239.30.[1]

On September 30, 1975, appellants appealed the assessments adopted on September 11, 1975, by the city council of the city of Winthrop to the district court of Sibley County. Prior to trial, on May 6, 1976, appellants moved for a jury trial on the issues. That motion was denied. Trial was had before the court on June 14, 1976. On October 14, 1976, the court issued findings of fact, conclusions of law, and an order for judgment, which, in essence, held that the market value of appellants' lands was increased by more than the amounts assessed for these improvements, with one exception specified therein, and that the assessments were therefore proper. Appellants made alternative motions for a new trial or amended findings, which were denied. Judgment was entered, and notice of appeal followed.

1. The first issue is whether the special benefits received by appellants' property as a result of the improvements equalled or exceeded the assessment made. The parties presented conflicting evidence regarding market value of the property before and after the improvements. The trial court made its own findings of fact, from which it concluded that the assessments did not exceed the benefits, and upheld the assessment.[2]

■ The role of the district court in reviewing a special assessment was summarized in *Joint Independent School District No. 287 v. City of Brooklyn Park*, 256 N.W.2d 512, 516 (Minn.1977):

"The levying of a special assessment is a legislative act. When an assessment is regularly made, it is presumed to be lawful and correct and the burden of proof rests upon the objector to demonstrate its invalidity. *In re Appeals by Am. Oil Co. v. City of St. Cloud*, 295 Minn. 428, 206 N.W.2d 31 (1973); *In re Improvement of Superior Street, Duluth*, 172 Minn. 554, 216 N.W. 318 (1927). * * *.

"However, the questions of whether the property assessed received any special benefit and whether the assessment exceeds the special benefit are always open for review. *E. H. Willmus Prop. Inc. v. Village of New Brighton*, 293 Minn. 356, 199 N.W.2d 435 (1972)."

In the instant case, the regularity of the assessment proceedings is not challenged. Appellants are only contesting the amount of the assessment. Because the city is presumed to have set the assessment legally, introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed the special benefit. An appellant may, however, overcome the presumption by introducing competent evidence that the assessment is greater than the increase in market value of the property resulting from the improvement. *E. H. Willmus Properties, Inc. v. Village of New Brighton*, 293 Minn. 356, 199 N.W.2d 435 (1972). In this case, appellants introduced such competent evidence—Lavern Ewert's testimony as to the change in value and the testimony of an experienced real estate appraiser. Such testimony was sufficient to overcome the city's prima facie case that the assessment did not exceed the special benefit.

■ After the city presented its own evidence on this question, the district court had to make a factual determination. *Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 370, 240 N.W.2d 517, 519 (1976). Where the landowner maintains that the assessment is excessive, this determination is to be a de novo one. *Buettner v. City of St. Cloud*, 277 N.W.2d 199 (Minn.1979). If the assessment exceeds special benefits, the action by the public body is a "taking" and is confiscatory. " * * * [T]he value of

---

1. According to the city attorney at oral argument, the average assessment per lot was approximately $3,400.

2. The district court found one error in the assessment. That finding is not involved in this appeal.

special benefits is found by determining what increase, if any, there has been in the market value of the benefited land." *E. H. Willmus Properties, Inc. v. Village of New Brighton,* 293 Minn. 361, 199 N.W.2d 438.

■ In this case, there was no evidence that the city council considered the market value of appellants' property either before or after the improvements. The testimony of the mayor, the city clerk, and the person who prepared the assessment roll was that no determination of market value was made. The failure of the city to determine the amount of the special benefits prior to adopting the assessment would have allowed the district court to reverse.

Rather than striking down the assessment on this ground, however, the district court received evidence on the market value of appellants' property before and after the improvements. There was substantial conflict in this evidence; the trial court resolved this conflict by adopting the evidence presented by the city's expert and upholding the assessment. Our task now is to review the district court's findings in light of our prior discussion mandating de novo review and impartial scrutiny of all evidence.

■ The standard for this court in reviewing a district court's confirmation of a special assessment was stated in *Carlson-Lang Realty Co. v. City of Windom,* 307 Minn. 373, 240 N.W.2d 521:

"The scope of our review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment."

Thus, this court need not accept the lower court's findings of fact but may reject those findings if they are not fairly supported by the evidence as a whole.

Both parties presented expert testimony. Both experts were from New Ulm, and both had similar background experience in real estate appraisal. Their methods of appraisal, however, differed. Appellants' expert, Forsberg, looked at the land itself, analyzed the current real estate market in Winthrop, and compared the property in issue to similar property recently sold to arrive at a market value. Respondent's expert, Koeckeritz, based his estimate of the market value on his experience in building and selling speculation homes in New Ulm. The differences in their estimate of market value are significant. In many cases the increase in market value estimated by the city's expert was twice that estimated by appellants' expert.

In addition to these expert witnesses, others who had sold property in Winthrop testified regarding the prices paid for that property. For example, one testified that he had recently sold a 96-foot by 162-foot lot for $3,500 plus assumption of $1,500 cost for installing sewer and water, and a 75-foot by 142-foot lot (with trees) for $3,000 plus $1,500 costs for sewer and water. Another stated that he had paid $2,760 for a lot with all improvements (size of this lot not made clear). Also, appellant Ewert testified as to his own estimates of the market value of his property before and after the improvement. Ewert also testified that he had sold a 100-foot by 105-foot lot, without improvements, for $2,200 in 1974, and a 100-foot by 165-foot lot for $2,700 in 1975.

■ Looking at the evidence as a whole, we conclude that it does not fairly support the findings of the trial court. First, despite the substantial differences in the estimates of market value, the trial court adopted the lowest estimate for market value before the improvements and the highest estimate for market value after the improvements. These estimates were those of the city's expert witness. In some cases, the trial court's determination exceeded the expert's estimate. For example, Koeckeritz estimated the post-improvement value of a 100-foot by 105-foot lot to be $4,750 to $5,000. The trial court found the post-improvement value of such a lot to be $5,500 (Highland Addition, Block 6).

Since the estimates of the experts may be biased in favor of the party employing them, which would explain the similarity of the estimates made by Ewert and Forsberg,

the city's expert is as likely to be biased as appellants' expert. The court made no apparent attempt to explain the differences in estimates or to arrive at a compromise figure. It gave no explanation for believing the city's expert rather than appellants'.[3]

Second, there is no basis for the trial court's finding on after-improvement value for the lots in block 4 of Highland Addition and in blocks 4, 5, and 8 of Second Highland Addition. The city's expert made no estimate for these. Third, the city's expert apparently based his estimates on the land's current use for farmland and its future potential use as sites for speculation homes. In determining market value, the best potential use is to be considered. *Joint Independent School District No. 287 v. City of Brooklyn Park, supra.* That requires comparing best potential use without (or before) improvements to best potential use with (or after) improvements. Here it appears that the court compared least valuable present use to most valuable future use. The district court's findings regarding the value of the unimproved lots is particularly questionable since it appears that no 100-foot lots suitable for residential construction had been sold for less than $2,000 for 2 years. Yet the court assigned those lots a preimprovement value of $950.

Given these substantial differences in estimates of market value, the district court should have ordered a reassessment.

■■■ 2. The right to a jury trial must be found either in the Minnesota Constitution or provided specifically by statute. The Minnesota Constitution does not give a right to jury trial to one who appeals a special assessment. First, Minn.Const. art. 1, § 4, provides that—

"[t]he right to trial by jury shall remain inviolate, and shall extend to all cases at law * * *."

This court has consistently held that this provision was intended to guarantee that the right to trial by jury exist as it had at the time that the constitution was adopted, that the right should be neither enlarged nor diminished. See, *Morton Brick & Tile Co. v. Sodergren,* 130 Minn. 252, 254, 153 N.W. 527, 528 (1915); *Board of County Commissioners v. Morrison,* 22 Minn. 178, 180 (1875). Second, the right to appeal from an assessment is a right established by statute and not a right existing at common law. See, *Wessen v. Village of Deephaven,* 284 Minn. 296, 298, 170 N.W.2d 126, 128 (1969); *Village of Edina v. Joseph,* 264 Minn. 84, 93, 119 N.W.2d 809, 816 (1962). Thus, the right to jury trial guaranteed by the Minnesota Constitution does not apply to appeals from assessments.

■■■ Because the right to appeal an assessment is wholly statutory, the conditions for appeal imposed by statute must be strictly followed and will be strictly construed.[4] See, *Wessen v. Village of Deephaven, supra; Village of Edina v. Joseph, supra.* The statute establishing the procedure for appeals of assessments, Minn.St. 429.081, provides that the appeal "shall be tried as other appeals in such cases." This language does not explicitly grant a right to jury trial on the assessment issue. Appellants argue that the phrase "other such cases" should be interpreted as allowing the same procedures in an assessment appeal as are allowed explicitly in three other statutes. Although there is some similarity between special assessment appeals and the proceedings provided in the other statutes, the analogy urged by appellants is not compelling.

■■■ The first statute cited by appellants is Minn.St. 117.165, subd. 1, which provides that where an appeal is taken to the district court from the award in an eminent domain proceeding, "the owner or

---

3. Forsberg's focus on comparable sales in Winthrop seems to be a more reasonable method than Koeckeritz' focus on his development business in New Ulm.

As we recently made clear in *Buettner v. City of St. Cloud,* 277 N.W.2d 199 (Minn.1979), the city's determination is not entitled to deference.

4. Rule 81.02, Minnesota Rules of Civil Procedure, provides that the "rules do not supersede the provisions of statutes relating to appeals to the district courts."

the petitioner shall be entitled to a jury trial." This court has held that the question whether land has been damaged so as to require condemnation is a question of law that must be decided by the trial court. The jury only determines the amount of the damages. *State, by Mondale v. McAndrews,* 286 Minn. 115, 117, 175 N.W.2d 492, 493 (1970). Thus, the role of the jury in reviewing eminent domain cases is limited to a very specific factual issue.[5]

Appellants next cite the statute establishing the procedures for appeals from orders issued in proceedings regarding construction, improvement, or extension of public water or sewer systems, Minn.St. 116A.19. Subdivision 1(b) of that statute provides that the "issues raised by the appeal shall stand for trial by jury." Subdivision 2, however, provides:

"In all cases of appeal from an order determining damages to property from the construction of any system, improvement, or extension, the amount awarded by the jury as finally determined shall stand for and in the place of the amount from which the appeal was taken. In all cases of appeal from an order confirming special assessments, the court shall either affirm the assessment or set it aside and order a reassessment as provided in section 116A.18, subdivision 2."

This provision clearly distinguishes between issues regarding the amount of damages and issues regarding special assessments. The former is to be decided by a jury, and the jury's determination of an appropriate amount of damages will replace that set by the order. The latter is to be decided by the court, and the court can either affirm the assessment or set it aside and order a reassessment. It cannot substitute its own assessment for that of the order. This same language is contained in Minn.St. 429.081. By analogy, then, assessments are to be reviewed and affirmed or set aside by a court, not a jury.[6]

Finally, appellants cite Minn.St. 106.631, providing for appeal from orders in proceedings regarding drainage systems. Subdivision 2(c) of that statute provides that the "issues raised by the appeal shall stand for trial by jury." The "issues raised" may include amounts of benefits determined, amount of damages allowed, allowance of fees or expenses, and sufficiency of the order. The most recent case applying this statute stated that the jury could determine whether the method of assessment "resulted in an arbitrary and unequal assessment as to particular property." *Oelke v. County of Faribault,* 260 Minn. 361, 367, 110 N.W.2d 145, 149 (1961). While it may appear that the jury is allowed to review a broad range of issues, the statute explicitly authorizes submitting these questions to a jury. This explicit grant distinguishes § 106.631 from § 429.081.

 In all the statutes cited by appellants, the right to jury trial was explicitly granted and the procedure for appeal is set out in detail. If the statute in question here is to be strictly construed, as suggested in earlier cases, there is no right to jury trial since none is explicitly granted. Appellants must make their argument before the legislature. It alone can award them a jury trial.

---

5. Appellants cite *City of St. Louis Park v. Engell,* 283 Minn. 309, 316, 168 N.W.2d 3, 8 (1969), as evidence that this court has recognized the similarity between special assessment proceedings and eminent domain proceedings. In that case, which involved the question whether special benefits must be set off against damages in determining a condemnation award, the court stated that the same measure is used to determine special benefits in condemnation proceedings and in special assessment proceedings. The "similarity" recognized there is not controlling on the question whether appellants are entitled to a jury trial in an appeal from a special assessment.

6. Appellants cite *Hanson v. Kittson-Marshall Rural Water Sys.,* 257 N.W.2d 305 (Minn.1977), for the proposition that Minn.St. 116A.19, subd. 1, provides the landowner with a right of appeal to the district court and a right to a jury trial on all fact issues. That case need not be controlling here. First, the amount of the assessment was not in issue. Second, although the court quoted subdivision 2, 257 N.W.2d at 306 n. 1, it did not discuss the distinction made in that provision between appeals from orders determining damages and appeals from orders confirming special assessments.

The case is thus remanded to the district court with instructions to make an independent finding of the special benefits to appellants' property, based upon an impartial review of evidence presented by both appellants and the city.

Reversed and remanded.