**ARROWHEAD REGIONAL
CORRECTIONS BOARD,
Respondent,**

v.

**AITKIN COUNTY, Appellant.**

No. C9–94–2601.

Court of Appeals of Minnesota.

July 25, 1995.

Alan L. Mitchell, St. Louis County Atty., Vernon D. Swanum, Asst. County Atty., Duluth, for respondent.

Bradley C. Rhodes, Aitkin County Atty., Aitkin, Dennis L. O'Toole, Sp. Asst. County

Atty., Lano, Nelson, O'Toole & Bengtson, Grand Rapids, for appellant.

Considered and decided by SCHUMACHER, P.J., and LANSING and HOLTAN *, JJ.

## OPINION

LANSING, Judge.

A regional corrections board created by a joint powers agreement sued a member county for user fees that exceeded the county's budget allocation. We reverse the summary judgment ordering the county to pay the fees because the additional allocation exceeded the board's contractual and statutory authority. We also reverse the order to refund the county's payments to the capital asset acquisition fund because they are payable to a withdrawing county only at the time of the asset's sale. We affirm the ordered refund of the county's contribution to the reserve fund.

## FACTS

Aitkin County appeals an adverse summary judgment requiring it to pay $203,-774.83 to the Arrowhead Regional Corrections (ARC) Board for correctional services fees. ARC appeals that part of the summary judgment ordering it to refund Aitkin County $18,573 from its reserve fund and $2558.72 from its capital asset acquisition fund. These appeals followed litigation of the parties' mutual financial obligations under a joint powers agreement.

In 1976 Aitkin and five other counties entered into a joint powers agreement to establish ARC for the provision of correctional services to member counties, as authorized by Minn.Stat. ch. 401, the Community Corrections Act, and Minn.Stat. § 471.59. This agreement outlines, among other things, the Board's powers and duties, a budgeting process, and specific withdrawal provisions.

Beginning in 1988, the ARC Board sought a more accurate method for allocating costs to its members to replace its system of per capita allocation. The Board passed two resolutions in 1989 to implement a new system based on the amount of correctional services actually used, as estimated by a prior three-year average. ARC contends that this three-year averaging method was an interim implementation step to safeguard member counties from unexpected increases in a given year, and that each member was ultimately responsible for its actual use in any given year. The 1990 and 1991 budget allocations were made using this new method, and were accepted and paid by the counties.

Aitkin County gave notice of its withdrawal from ARC effective January 1, 1992, in compliance with the joint powers agreement's withdrawal provision. After its withdrawal, ARC requested that the county pay $203,774.83 for actual institutional usage above the budget allocations in 1990 and 1991. The county refused to pay this amount, arguing that it is not obligated to pay for institutional usage beyond its annual budget allocation.

## ISSUES

I. Did the district court err by granting summary judgment to ARC for the amount of actual usage billed after collection of the annual budget?

II. Did the district court err by granting summary judgment to Aitkin County on its counterclaims for reimbursement from the ARC reserve and capital asset acquisition funds?

## ANALYSIS

### I

The joint powers agreement creating ARC is authorized by the Community Corrections Act, which provides grants for correctional services organized by a group of contiguous counties acting in compliance with Minn.Stat. § 471.59. Minn.Stat. § 401.02, subd. 1 (1994). Minn.Stat. § 471.59 permits governmental units to "join together as a single entity in order to accomplish a common

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

goal." *Joint Indep. Sch. Dist. No. 287 v. City of Brooklyn Park,* 256 N.W.2d 512, 515 (Minn.1977). To operate as a single entity, the governing bodies of participating governmental units must enter into an agreement that sets out the unitary purpose and how it will be accomplished. Minn.Stat. § 471.59, subds. 1, 2 (1994). If the parties to the joint powers agreement include provisions regarding purpose, funds disbursement, participation termination, and property distribution, they may establish a board to govern the joint entity. *See id.* at subd. 11.

■ The ARC Board and Aitkin County do not dispute that the joint powers agreement establishing ARC complies with the statutory requirements. The disagreement centers on the Board's authority to charge fees in excess of the annual budget allocations approved by the member counties.

The Community Corrections Act directs participating governmental units to include a formula for apportioning costs in the joint powers agreement. Minn.Stat. § 401.05, subd. 4 (1994). The joint powers agreement creating ARC lacks a specific apportionment formula but instead outlines an annual budget process that specifies each member county's total costs for that year:

> [T]he Board shall prepare its annual budget which shall be submitted to each member County Board. The budget shall specify the total amount to be provided by each member county. The County Board of each member county shall approve or disapprove of the budget.
>
> * * * * *
>
> The * * * budget shall be prepared in such a manner as will provide essential cost information to the member County Boards * * *.
>
> The County Board of each member county shall, upon the approval of the budget * * *, provide by levy or otherwise its portion of the annual budget.

Historically, the ARC Board has determined the cost allocation formula. The joint powers agreement authorizes the Board to develop and implement policies and procedures for operating, controlling, managing, and maintaining the adult and juvenile correctional facilities. It also states that "[t]he Board shall have and exercise all powers that may be necessary and convenient to enable it to perform and carry out the duties and responsibilities conferred on it by this Agreement."

But the Board's ability to allocate member costs, whether under the old or new cost model, is subject to the annual budgeting process explicitly laid out in the joint powers agreement. The Board submitted to Aitkin County its 1990 and 1991 budgets, which were approved and paid for by the county. The Board thus fulfilled its implied duty of determining a cost allocation method and its express duty of submitting to the member counties "the *total amount* to be provided by each member county" for approval and payment. Once it had secured approval and payment for a budgetary year, the Board lacked the authority under the joint powers agreement or the two enabling statutes to collect any further amounts for that year.

ARC contends that limiting its 1990 and 1991 allocation powers to the budgeting process is unfair because it foists disproportionate costs on the other member counties. Aitkin County counters that it has previously paid disproportionate allocations and did not receive any equalization. The record does not demonstrate which equitable argument is accurate, but the resolution rests on contractual and statutory grounds.

The power of ARC, as a joint entity, derives from the individual counties that created it under specific statutory directives. The enabling statutes give the regional board relatively broad authority to enter contracts, acquire property, and manage personnel on behalf of the member counties, while limiting its powers to raise funds from the counties themselves. *Compare* Minn.Stat. § 401.02, subd. 3 (1994) *and* Minn.Stat. § 401.04 (1994) (administrative organization) *with* Minn.Stat. § 401.05 (1994) (fiscal powers) *and* Minn. Stat. § 471.59, subd. 11 (limiting authority of board to affect member counties' indebtedness). These statutory fiscal limitations are consistent with the provisions in the joint powers agreement requiring member county approval to allocate costs to them. Without a county-approved budget change, the Board cannot allocate additional fees after it has

submitted the annual budget to the county and the county has approved and paid it. The district court misapplied the law in granting summary judgment to the Board and must be reversed.

## II

 ARC appeals that part of the summary judgment order requiring it to refund Aitkin County $18,573 in reserve funds and $2558.72 in capital asset acquisition funds. The joint powers agreement provides for remittance of surplus funds in operating accounts at the end of the fiscal year of withdrawal:

> No withdrawing county shall be entitled to reimbursement of any funds contributed by it during the course of its membership on the Board, except to the extent of any surplus uncommitted monies as may remain in operating accounts (as opposed to capital asset acquisition accounts) upon expiration of the fiscal year of the county's withdrawal.

The Board contends that because the county owes ARC for actual institutional usage, it is precluded from collecting the reserve funds under the provision that "[n]o county shall receive any share of surplus funds unless such county has made all back and current contributions required hereunder." We affirm the district court's grant of summary judgment because Aitkin County owes no additional funds to ARC.

We reverse, however, the district court's award of $2558.72 in capital asset acquisition funds. The joint powers agreement specifically provides that "[f]unds utilized for capital asset acquisition (e.g., real property) shall be paid to a withdrawing county only at the time of sale of such asset or its diversion to a use inconsistent with the purposes of this Agreement." The county has not shown the sale or diversion of an asset, and thus is not entitled to summary judgment for this amount.

## DECISION

The district court erred in permitting the joint powers board to collect member fees in excess of its contractual and statutory authority under Minn.Stat. § 471.59, and to refund capital asset acquisition funds absent a showing of sale or diversion of that asset. The district court properly held that the county was entitled to its share of reserve funds upon withdrawal.

**Reversed in part, affirmed in part.**